[No. 7004–45140–1. Division One. October 8, 1979.]

CARL R. LANGE, ET AL, *Appellants,* v. THE NATURE CONSERVANCY, INC., ET AL, *Respondents.*

*William V. Vetter* and *William L. Williams*, for appellants.

*Bannister, Bruhn & Cuningham, John R. Cuningham, Eugene H. Knapp, John B. Nason, Owen A. Johnson, Riddell, Williams, Ivie, Bullitt & Walkinshaw, Vincent R. Larson, Lyn Tangen, Detels, Draper & Marinkovich,* and *Eric L. Freise,* for respondents.

SWANSON, A.C.J.—Carl and Ruby Lange and Litmar, Inc., appeal from adverse summary judgments in a dispute arising out of the inclusion of their San Juan Island property in an "Inventory of Natural Areas on Private Lands" prepared by The Nature Conservancy, Inc., with the aid of various San Juan County officials. We find no error and affirm.

The Nature Conservancy (TNC) is a private, nonprofit, scientific organization devoted to the identification and

protection of natural environs. TNC's Northwest office planned an "Inventory of Natural Areas on Private Lands, San Juan County, Washington." Through the inventory, TNC hoped to identify unique, privately held areas, alert owners to their ecological significance and potential methods of preservation, and provide state and county governments scientific data for land use planning purposes. The San Juan County Planning Department, when informed of TNC's plans, decided the inventory would benefit the county in making land use policy decisions and offered TNC office space, secretarial help, and further cooperative aid. Using public records and existing literature and field studies, the inventory team compiled a list of approximately 75 potentially significant natural areas between May and December of 1974.

In January of 1975, TNC published the inventory, listing 57 natural areas, describing each area's natural characteristics, and identifying uses compatible with those characteristics. The inventory also contained "recommendations to the San Juan County government" and "implementation techniques" regarding private and public methods of protecting natural areas. TNC presented the inventory to the San Juan County Commissioners and the San Juan County Planning Department on March 17, 1975. At no time has the county adopted or taken other official action regarding the inventory.

The subject property consisted of an island, a gravel tombolo exposed at low tide, contiguous portions of San Juan Island and adjacent tidelands, named "Minnesota Reef," in the inventory and owned by the Langes in part since 1961. In 1973, the Langes took up permanent residence in a summer cabin on the property and started construction of a new home. In addition, the Langes envisioned beginning a "pilot" aquaculture project involving seaweed farming and marine research laboratories. In April 1975, when the permanent residence was about half finished, the Langes received by mail a copy of TNC's inventory, identi-

fying their property as having high priorities for preservation in its natural state. Thereafter, the Langes stopped work on the new house and abandoned the plans to develop an aquaculture project.

The Langes filed suit in August 1975, alleging a myriad of causes of action against some and all named defendants, including common–law trespass, deprivation of rights in violation of 42 USC § 1983, conspiracy to deprive plaintiffs equal protection of the laws in violation of 42 USC § 1985, violation by TNC of RCW 19.86 (unfair trade practice and monopolization of trade), and violations of SEPA and inverse condemnation by San Juan County and its officials. Defendants moved for summary judgment. On July 20, 1977, the trial court granted a partial summary judgment. Following hearing of defendants' motion for reconsideration, summary judgment was granted as to the remaining causes of action.

 The Langes assign numerous errors. We note at the outset of discussion that in reviewing a summary judgment the function of this court is "to determine whether a genuine issue of material fact exists, not to resolve the issue." *Ashcraft v. Wallingford,* 17 Wn. App. 853, 854, 565 P.2d 1224 (1977). In so doing, we shall "consider all facts submitted and all reasonable inferences from the facts in the light most favorable to the [Langes]." *Highline School Dist. 401 v. Port of Seattle,* 87 Wn.2d 6, 15, 548 P.2d 1085 (1976).

The first specific alleged error concerns the question of trespass. The trial court held reasonable persons could not conclude that respondents or their agents entered upon the subject property. The Langes argue such constituted a weighing of the relative credibility of the proffered evidence, a function properly within the domain of the jury. The Langes rely on statements in a letter and the inventory which allegedly established that their property was subject to a "field check." The deposition of Charles Eaton, however, establishes without contradiction that he was the sole

TNC agent involved in the study of Minnesota Reef, that he relied exclusively upon the 1968 study by one Susan Heller, and that he went upon the Langes' property only once, in 1974, prior to his association with TNC and with the permission of the Langes. There is simply no evidence of an unauthorized entry upon the Langes' property by anyone connected with the inventory.

■ The Langes next argue the trial court erroneously granted summary judgment as regards their claimed inverse condemnation rights.

To maintain an inverse condemnation suit for damages . . . the property owner must allege interference with the use and enjoyment of his land and a resulting loss in market value.

*Highline School Dist.*, at 14. The Langes contend depositions before the trial court established interference with the subject property and that a question of fact thus exists regarding the balancing of public interest in interfering with the property and the interests of the property owner. *See Department of Ecology v. Pacesetter Constr. Co.*, 89 Wn.2d 203, 571 P.2d 196 (1977); *Maple Leaf Investors, Inc. v. Department of Ecology*, 88 Wn.2d 726, 731, 565 P.2d 1162 (1977).

It is difficult to ascertain the basis for such an argument, for nothing in the record supports the assumption that the subject property has suffered a taking or damages. At no point has the county expressed any interest in acquiring the subject property. The inventory standing alone carries no legal weight. Even had the county officially adopted the inventory in some manner, the Langes would be hard pressed to demonstrate any interference with the enjoyment or use of their property, as the inventory recommends that "no restricted use [thereof] is necessary . . ." It is immaterial that the Langes discontinued construction of a new home and abandoned plans for a certain aquaculture project, for such actions were voluntary and in no way required by county action.

■ The Langes alleged three causes of action under the Civil Rights Act, 42 USC §§ 1981–88, the first of which relies upon 42 USC § 1983, which reads in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunity secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

The Langes contend that the county, in the course of supporting TNC, denied the Langes any opportunity to be heard regarding, or even to be cognizant of, the compilation of the inventory. This, they contend, established a cause of action for denial of due process under the color of state action. We cannot agree.

The Langes offer no applicable authority, and we can find none, to support the proposition that public hearings must be held before a governmental body may participate in an information gathering process. Absent some deprivation of a constitutional right, no cause of action inures under section 1983.

■ The Langes further rely on section 1985 of the Civil Rights Act, which provides means of recovery for the victim of a conspiracy intended to deprive "any person or class of persons of the equal protection of the laws," and section 1986 thereof, which grants a cause of action against persons empowered to prevent violations of section 1985, of which they are aware who do not do so. The Langes contend they are members of a class—owners of scenic and natural property—discriminated against by the actions of TNC and the county. The Langes fail, however, to demonstrate either a conspiracy, or a class–based animus, or how they now enjoy less than equal protection of the law. The Langes argue only that because their property may become "preserved" their rights will be less than those of owners of "ordinary" property. Such conclusive reasoning cannot of itself create a

cause of action. The section 1986 allegation suffers the same deficiencies.

■ The Langes also charge TNC with attempting to create a captive market in which to acquire the subject property by limiting the property's uses. Thus, they argue, a cause of action exists under RCW 19.86 for monopolization and unfair competition. Beyond the fact, as discussed above, that no restrictions on the use of the subject property have resulted from compilation or publication of the inventory, it is well established that an individual, and thus TNC, has a First Amendment right to try to influence government action. *See Eastern R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 5 L. Ed. 2d 464, 81 S. Ct. 523 (1961); *Sierra Club v. Butz*, 349 F. Supp. 934 (N.D. Cal. 1972).

Finally, the Langes argue that the presentation of this case at trial in the form of specific legal theories obscured "the basic issue." Discussion of this "issue" revolves primarily around the history and law of the "taking" clause. This issue is presented and resolved with mention of the theory of inverse condemnation.

An award of attorneys' fees granted by the trial court is disputed by the Langes as being improperly itemized. The trial court took cognizance of the propriety of awards under 42 USC § 1988 and concluded an award proper. We agree. We further hold an award of fees appropriate on appeal pursuant to RAP 18.1 and 42 USC § 1988, in the amount of $3,500. *See Meyer v. Missouri State Highway Comm'n*, 567 F.2d 804 (8th Cir. 1977); *Kutska v. California State College*, 564 F.2d 108 (3d Cir. 1977); *Equal Employment Opportunity Comm'n v. Datapoint Corp.*, 412 F. Supp. 406 (W.D. Tex. 1976).

The trial court is affirmed in full.

CALLOW, C.J., and WILLIAMS, J., concur.

Reconsideration denied November 29, 1979.

Review denied by Supreme Court February 22, 1980.