VICENTA BONILLA y OTROS, demandantes y recurridos, *v.* CAR-
LOS J. CHARDÓN y OTROS, demandados y recurrentes.

*Número:* R-85-48 *Resuelto:* 24 de marzo de 1987

600

602

*Américo Serra, Procurador General Interino, Josefa A. Román García, Procuradora General Auxiliar,* abogados de los recurrentes; *Carlos Quirós Méndez,* de Servicios Legales de P.R., Inc., y *Juan Francisco Arroyo Elicier,* abogados de los recurridos.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

La única y verdadera controversia ante nos se circunscribe a interpretar si proceden daños por angustias mentales y honorarios de abogados cuando el Estado incumple los deberes taxativos impuestos por la Ley de Puerto Rico de Educación Especial, Ley Núm. 21 de 22 de julio de 1977 (18 L.P.R.A. sec. 1331 *et seq.*). Ello nos permite examinar el alcance e interacción de las leyes reparadoras aprobadas por el Congreso de Estados Unidos y la Asamblea Legislativa de Puerto Rico con relación a las reclamaciones de los niños con impedimentos físicos.

Así deslindado el campo de esta opinión, nos abstenemos prudencialmente de considerar en abstracto el ámbito del derecho a la educación bajo la Constitución del Estado Libre Asociado de Puerto Rico por prevalecer una norma de autolimitación judicial. *Hernández Agosto v. Betancourt,* 118 D.P.R. 79 (1986); *Molina v. C.R.U.V.,* 114 D.P.R. 295, 297 (1983); *Mari Bras v. Alcaide,* 100 D.P.R. 506, 513 (1972); *Pueblo ex rel. M.G.G.,* 99 D.P.R. 925, 927 (1971); *Suárez*

*Sánchez* v. *Tribunal Superior*, 92 D.P.R. 507, 516 (1965);
*E.L.A.* v. *Aguayo*, 80 D.P.R. 552, 596 (1958); *Walker* v.
*Tribl. Contribuciones y Tesorero*, 72 D.P.R. 698, 706 (1951);
*Spanish Am. Tobacco Co.* v. *Buscaglia*, 71 D.P.R. 991, 993
(1950).

I

Este caso comienza en 1978 cuando unos niños sordomudos, estudiantes de un programa especial, fueron trasladados, sin razón alguna, de una escuela intermedia a una elemental que no disponía de los recursos humanos y físicos necesarios para ofrecer dicha educación especial. Allí se les asignó una maestra sin preparación pedagógica para instruir a estos niños y se les envió a un salón que era "una pequeña cobacha, carente de suficiente iluminación y ventilación, y que no estaba habilitada para la enseñanza de niños sordos". (*Exhibit* I, pág. 3.) Los jóvenes fueron segregados del resto de los estudiantes mediante un portón de reja que impedía su interacción, incluso, en las horas de almuerzo y recreo. Tampoco se les ofrecieron los servicios remediales tales como terapia del habla, equipo audiológico, transportación, educación física y otros.

Después de varios intentos infructuosos de obtener un remedio administrativo, los padres demandaron al Departamento de Instrucción Pública. Ante dicha acción, el Secretario de Instrucción Pública se comprometió a brindarle a los jóvenes la educación especial requerida por ley. Los padres consintieron al ofrecimiento y los niños fueron trasladados a la Escuela República del Brasil (también de nivel elemental) en agosto de 1979. Sin embargo, incumplieron su promesa. En dicha escuela tampoco se les ofreció la educación especializada necesaria. Frustrados y humillados ante tal situación, los jóvenes "comenzaron a tener problemas de conducta en sus respectivos hogares y a no querer asistir a la escuela. Uno a uno abandonaron la escuela". (*Exhibit* I, pág. 6.) Los padres acu-

dieron de nuevo al foro judicial mediante el recurso de *injunction* e invocaron, entre otras disposiciones, la Sec. 1983 de la Ley Federal de Derechos Civiles, 42 U.S.C. sec. 1983.

Cinco años después de la radicación de la demanda, las partes llegaron a una estipulación en la cual *los demandados aceptaron* la existencia de daños y la relación causal entre sus actos y los daños probados. [1] En una extensa y bien fundamentada sentencia, el Tribunal Superior determinó que hubo violación de los derechos constitucionales y estatutarios de los demandantes y que la actuación de suspenderle a los menores demandantes la educación especial que recibían fue "arbitraria, injusta y caprichosa". El tribunal expidió un *injunction* que ordenaba que se le brindara a los demandantes la educación especial y los servicios relacionados a que tenían derecho. También concedió la cantidad de $18,000 a cada menor y $5,000 a cada padre como compensación por los daños morales y angustias mentales producidos por la violación de sus derechos constitucionales. A uno de los padres le concedió una indemnización por $6,495 para reembolsarle por gastos de educación especial. El pago total ascendió a $144,495 más $3,000 por concepto de honorarios de abogados y las costas del pleito.

De dicha sentencia recurren los funcionarios del Departamento de Instrucción Pública e impugnan solamente la decisión del tribunal de instancia que concedió *daños* y el pago de honorarios de abogado. [2]

## II

Aunque por muchos siglos las sociedades han marginado, discriminado y estigmatizado a las personas con impedimentos

---

[1] Durante el juicio la parte demandante presentó extensa prueba testifical y documental, incluyendo a varios peritos. Por su parte, los demandados no presentaron prueba alguna y tampoco contestaron un requerimiento de admisiones que se dio por admitido.

[2] Aunque los recurrentes también han cuestionado las cuantías concedidas como indemnización, sus argumentos no son persuasivos. *Rodríguez Cancel* v. *A.E.E.*, 116 D.P.R. 443 (1985).

físicos, en las últimas dos décadas el estado moderno ha tomado medidas afirmativas para incorporarlos a la comunidad. Entre los cambios más notables se destaca el reconocimiento de su derecho a recibir y reclamar judicialmente educación remedial. Véanse: H. Quiñones Echevarría, *Educación para niños con impedimentos: Análisis de legislación y jurisprudencia*, 17 Rev. Jur. U.I. 365 (1983); R. Burgdorf, *The Legal Rights of Handicapped Persons*, Baltimore, Paul H. Brookes Publ., 1980; F. W. Ten Brock y J. Matson, *The Disabled and the Law of Welfare*, 54 Calif. L. Rev. 809 (1966).

En Puerto Rico la Asamblea Legislativa aprobó en 1977 una ley remedial que creó el Programa de Educación Especial para Niños con Impedimentos. En su exposición de motivos se reconoció que debido a los diferentes problemas de aprendizaje que tienen estos niños, necesitan educación correctiva:

. . . Esta clientela tiene diversos problemas de aprendizaje, entre los que incluyen [*sic*], retardación mental educable, retardación mental adiestrable, problemas específicos del aprendizaje, problemas ortopédicos, problemas crónicos de salud, audición, disturbios emocionales, visión y problemas del habla y lenguaje.

La naturaleza de estos problemas hace necesario que tales niños tengan una educación especializada, distinta a la que normalmente ofrece el Programa Regular de Instrucción Pública. Requieren además, maestros especializados y facilidades educativas de acuerdo a sus necesidades.

. . . . . . . .

El derecho que tiene el niño impedido al disfrute de una educación adecuada nos mueve a promover legislación hacia la creación de un programa especial que llene las necesidades de éstos.

. . . . . . . .

Esta Asamblea Legislativa reconoce que el Pueblo de Puerto Rico tiene el deber de garantizar el derecho a la educación adecuada que necesita la población estudiantil con impedimentos físicos, mentales y emocionales. Exposición de Motivos, Ley del Programa de Educación Especial, Ley

Núm. 21 de 22 de julio de 1977 (18 L.P.R.A. sec. 1331 *et seq.*).

■ Esta legislación reparadora define "educación especial" como la "instrucción especialmente diseñada para llenar las necesidades muy particulares del niño impedido, incluyendo experiencias de enseñanza y aprendizaje dentro del salón de clases, instrucción en educación física, bellas artes, instrucción en el hogar, en hospitales e instituciones públicas o privadas debidamente reconocidas por el Departamento que llenen los requisitos establecidos por este Capítulo sin costo alguno para el padre o encargado". Art. 2(e), 18 L.P.R.A. sec. 1332(e). A manera de ilustración véanse: *Hendrick Hudson Dist. Bd. of Ed.* v. *Rowley*, 458 U.S. 176 (1982); *Irving Independent School Dist.* v. *Tatro*, 468 U.S. 883 (1984).

Mediante esta legislación se provee a cada niño una educación remedial conjuntamente con una serie de servicios complementarios. Para mayor efectividad del programa, se requiere que se diseñe un plan individualizado para cada niño donde se identifiquen sus fortalezas y necesidades particulares. Art. 10 (18 L.P.R.A. sec. 1340(c)); *Reglamento del Programa de Educación Especial*, Art. IX. Además, se exige que los niños reciban los programas educativos en un ambiente que estimule y facilite su desarrollo. *Reglamento del Programa de Educación Especial*, Art. III(A)(14); Nota, *Enforcing the Right to an "Appropriate" Education: The Education for All Handicapped Children Act of 1975*, 92 Harv. L. Rev. 1103, 1118–1124 (1979); *Hendrick Hudson Dist. Bd. of Ed.* v. *Rowley*, supra, págs. 202–203.

La ley también provee un procedimiento para que los padres y los niños puedan obtener esta educación remedial. En primer lugar, todas "[l]as decisiones relacionadas con la identificación, evaluación, ubicación y tratamiento que afecta al niño impedido se tomarán, en todo momento, con el consentimiento y aprobación de los padres". Art. 8(a), 18 L.P.R.A. sec. 1338(a). Cualquier objeción podrá ser presentada como

querella ante la Región Educativa, donde deberá ser considerada y evaluada diligentemente, 18 L.P.R.A. sec. 1338(b). Dentro de los veinte (20) días laborables luego de instada su reclamación, el querellante tendrá derecho a una vista, y podrá apelar ante el Secretario cualquier determinación tomada por el examinador. *Reglamento del Programa de Educación Especial*, Art. XI.

■ Del historial legislativo se desprende que al aprobar la Ley del Programa de Educación Especial, la Asamblea Legislativa utilizó como modelo la Ley Federal de Educación para Niños con Impedimentos, Ley Púb. Núm. 94–142, 84 Stat. 175, 20 U.S.C. sec. 1400 *et seq.* Esta legislación provee fondos federales a agencias educativas a nivel local y estatal, para que éstas brinden instrucción remedial a niños con impedimentos físicos de acuerdo con los requisitos sustantivos dispuestos por el Congreso. La ley requiere que las agencias beneficiarias del programa federal provean garantías procesales a los padres e hijos, tanto para la reclamación como para la protección de los derechos adquiridos.

■ Bajo el esquema legislativo analizado anteriormente, las cortes estatales pueden ejercer jurisdicción concurrente sobre litigios basados en la Ley Federal de Educación para Niños con Impedimentos. El ejercicio de la jurisdicción concurrente por los tribunales estatales para proteger derechos de creación federal ocurre con relativa frecuencia. Véase *Acevedo* v. *Srio. Servicios Sociales*, 112 D.P.R. 256, 259–260 (1982). La Ley Federal de Educación para Niños con Impedimentos específicamente autoriza a cualquier ciudadano perjudicado por una decisión de una agencia educativa local a recurrir en revisión judicial a los tribunales, tanto estatales como federales, para proteger sus derechos.

■ Por otro lado, la legislación puertorriqueña aprobada para poner al Gobierno en condiciones de recibir la asig-

nación federal para estos programas remediales, crea también unos derechos reclamables en los tribunales del país. Aunque la ley de Puerto Rico guarda silencio sobre la revisión judicial del proceso administrativo, esto no impide necesariamente nuestra intervención. Cuando la legislatura no ha prohibido en forma expresa y clara su intención de limitar el acceso a los tribunales, se presume la revisión judicial. *Rivera* v. *Benítez, Rector*, 73 D.P.R. 377 (1952); *López* v. *Muñoz, Gobernador*, 80 D.P.R. 4 (1957); *Medina* v. *Pons*, 81 D.P.R. 1 (1959). ([3]) Tampoco es permisible bajo nuestro sistema constitucional que se le impida a los tribunales, en forma directa o indirecta, ejercer sus facultades revisoras cuando los organismos administrativos han actuado en forma contraria a los preceptos constitucionales. *Hernández Montero* v. *Cuevas, Director*, 88 D.P.R. 785, 803 (1963).

## III

La parte recurrente alega que el foro de instancia erró al conceder indemnización por las angustias mentales sufridas por los demandantes. Apoyándose en la jurisprudencia federal, *Smith* v. *Robinson*, 468 U.S. 992 (1984); *Burlington School Comm.* v. *Mass. Dept. of Ed.*, 471 U.S. 359 (1985), el Procurador General argumenta que ni la ley federal ni la estatal proveen un remedio para los daños causados por el incumplimiento del mandato legislativo.

En *Smith* v. *Robinson*, supra, el Tribunal Supremo federal concluyó que al aprobarse la Ley Federal de Educación para Niños con Impedimentos, se creó un remedio especial y exclusivo *para reclamar el derecho a la educación adecuada*. Sin embargo, se aceptó que la Ley de Derechos Civiles podía

---

([3]) Sobre el particular véanse también: *Dunlop* v. *Bachowski*, 421 U.S. 560 (1975); *Data Processing Service* v. *Camp*, 397 U.S. 150 (1970); *Barlow* v. *Collins*, 397 U.S. 159 (1970); *Abbott Laboratories* v. *Gardner*, 387 U.S. 136 (1967).

utilizarse como instrumento para vindicar una violación al *debido proceso de ley. Smith* v. *Robinson,* supra, pág. 1014 n. 17. Por otro lado, en *Burlington School Comm.* v. *Mass. Dept. of Ed.,* supra, el Tribunal Supremo de Estados Unidos permitió, como parte de los remedios autorizados por la ley federal, el reembolso de gastos educativos incurridos en instituciones privadas cuando el plan educativo propuesto por la agencia no es el apropiado para el niño. (⁴)

■ La Ley Federal de Educación autoriza a los tribunales estatales o federales a conceder "aquel remedio que determine apropiado". 20 U.S.C. sec. 1415(e)(2). De esta manera el Congreso estableció para ambas jurisdicciones un remedio *federal* que fue interpretado restrictivamente en *Smith* v. *Robinson,* supra, y *Burlington School Comm.* v. *Mass. Dept. of Ed.,* supra, pero dejó a los estados en libertad para ampliar los remedios disponibles.

■ En el caso de Puerto Rico, la regla general en el campo de la responsabilidad extracontractual es que aquel que por acción u omisión causa daño a otro interviniendo culpa o negligencia, está obligado a reparar el daño causado. Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141. Se desprende de dicho principio, que todo perjuicio, material o moral, da lugar a reparación si concurren tres requisitos o elementos: (1) tiene que haber un daño real; (2) debe existir nexo causal entre el daño y la acción u omisión de otra persona, y (3) el acto u omisión tiene que ser culposo o negligente. *Hernández* v. *Fournier,* 80 D.P.R. 93, 96 (1957); *Reyes* v. *Sucn. Sánchez Soto,* 98 D.P.R. 305, 311–312 (1970). Al interpretar el referido precepto legal, nuestra jurisprudencia ha expresado que el concepto de culpa "es tan infinitamente amplio como la conducta de los seres humanos e incluye cualquier falta de una persona

---

(⁴) En el presente caso se concedió un reembolso de este tipo ascendente a $6,495, el cual no ha sido cuestionado por los recurrentes.

que produce un mal o daño". *Colón* v. *Romero Barceló,* 112 D.P.R. 573, 579 (1982). Este precepto constituye una norma general para la reparación de todo daño ilícito, *Reyes* v. *Sucn. Sánchez Soto*, supra, pág. 311, incluso cuando la actuación culposa contraviene intereses o derechos garantizados por la Constitución o por legislación protectora de derechos civiles. *Colón* v. *Romero Barceló*, supra; *Muriel* v. *Suazo*, 72 D.P.R. 370, 376 (1951).

El hecho de que nuestra ley de educación especial no disponga de un remedio en daños, no impide que al amparo del Art. 1802 del Código Civil se puedan reclamar por una crasa violación del debido proceso de ley garantizado por las leyes federales y estatales que crean los programas de educación remedial para los niños impedidos.([5]) Tanto la legislación vigente como sus reglamentos le imponen un deber extraordinario a los funcionarios del Departamento de Instrucción de observar unos procedimientos específicos para la protección y beneficio de los niños con impedimentos físicos. La responsabilidad delegada en estas funciones rebasa las obligaciones regulares inherentes a sus cargos. La intención legislativa fue garantizarle a los impedidos el derecho a una educación especial, por lo que se estructuraron mecanismos procesales que aseguraran que no se les privaría de su derecho injustificadamente. En estas circunstancias, y al considerar el carácter reparador de esta legislación especial, la violación arbitraria e injustificada de esos deberes impuestos por ley es fuente de responsabilidad por los daños causados. Véase *Muriel* v. *Suazo*, supra, pág. 376. *Cf.* Art. 659 de la Ley de Recursos Extraordinarios, 32 L.P.R.A. sec. 3431.

---

([5]) El Art. 12 del Código Civil, 31 L.P.R.A. sec. 12, dispone que "[e]n las materias que se rijan por leyes especiales, la deficiencia de éstas se suplirá por las disposiciones de este título". Véase *Martínez* v. *Llavat*, 86 D.P.R. 235, 247 (1962). .

■ En este caso los daños fueron clara y efectivamente probados. *Cf. Carey* v. *Piphus*, 435 U.S. 247 (1978). La parte recurrente aceptó su existencia y relación causal mediante una estipulación; el foro de instancia concluyó que éstos fueron producidos por los actos arbitrarios, injustos y caprichosos de los demandados, constitutivos de deliberada indiferencia y negligencia crasa en el desempeño de sus deberes en violación del debido proceso. (⁶) Esta conducta constituye una violación de sus derechos, que es remediable tanto por la Ley Federal de Derechos Civiles como por el Art. 1802 del Código Civil. En estas circunstancias, la compensación de daños a los recurridos no es incompatible con la Ley de Puerto Rico de Educación Especial, por lo que procede que los funcionarios demandados respondan por sus actuaciones. Al no cumplir éstos con las obligaciones impuestas por estas legislaciones y probados los daños y la adecuada causal, procede la reparación de los mismos.

IV

Finalmente, queda por discutir el señalamiento de los recurrentes en cuanto a la procedencia de honorarios de abogado. Alegan que bajo la Ley Federal de Educación para Niños con Impedimentos y la Ley de Puerto Rico de Educación Especial no se podían conceder honorarios. *Cf. De León* v. *Sria. de Instrucción*, 116 D.P.R. 687 (1985).

La acción que origina esta controversia fue instada al amparo de la Ley Federal de Derechos Civiles, 42 U.S.C. sec. 1983 (⁷) y del Art. 1 de la Ley Núm. 12 de 8 de agosto de

_____

(⁶) Debido a la conclusión del foro de instancia sobre la conducta de los demandados que no ha sido cuestionada ante nos, no es necesario considerar si la simple negligencia es suficiente para recobrar daños por una causa de acción de este tipo.

(⁷) La Sec. 1983 dispone:

"Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia,

1974 (32 L.P.R.A. sec. 3524).(⁸) En el ejercicio de su juris-
dicción concurrente, el Tribunal Superior acogió la demanda y
dictó la sentencia elevada a esta curia. El foro de instancia
actúo correctamente bajo la Ley Federal de Derechos Civiles
cuando ejerció jurisdicción concurrente sobre una alegada vio-
lación al debido proceso de ley de la Constitución de Estados
Unidos. *Acevedo* v. *Srio. Servicios Sociales,* supra; *Martínez*
v. *California,* 444 U.S. 277, 283 n. 7 (1980); *Maine* v. *Thi-
boutot,* 448 U.S. 1, 3 n. 1 (1980).

■ Contrario a lo argumentado por los recurrentes, la Ley
Federal de Educación a Niños con Impedimentos no impide que
se utilice la Ley Federal de Derechos Civiles cuando es para vin-
dicar una violación del debido proceso. En *Smith* v. *Robinson,*
supra, el Tribunal Supremo federal consintió que se utilizara
la legislación de derechos civiles para obligar a las agencias a
cumplir con los procedimientos mínimos garantizados por la
Constitución. Véanse: *Manecke* v. *School Bd. of Pinellas*

---

subjects, or causes to be subjected, any citizen of the United States or other
person within the jurisdiction thereof to the deprivation of any rights, privi-
leges, or immunities secured by the Constitution and laws, shall be liable to
the party injured in an action at law, suit in equity, or other proper pro-
ceeding for redress. For the purposes of this section, any Act of Congress
applicable exclusively to the District of Columbia shall be considered to be a
statute of the District of Columbia."

(⁸)Esta ley dispone en su parte pertinente que:
"3. . . . . . . .
". . . [E]l tribunal podrá dictar dicha orden de entredicho provisional,
*injunction* preliminar o permanente sujeto a los términos de la Regla 57 de
Procedimiento Civil:
"(1) . . . . . . . .
"(2) Cuando en la petición se alegue que alguna persona, bajo la
autoridad de alguna ley, ordenanza, o reglamento del Estado Libre Asociado
de Puerto Rico, esté privando o sea el causante de que alguien esté privando
al peticionario de algún derecho, privilegio o inmunidad protegido por la
Constitución o las Leyes del Estado Libre Asociado de Puerto Rico o por la
Constitución o Leyes de los Estados Unidos de América que sean aplicables
a las personas bajo la jurisdicción del Estado Libre Asociado de Puerto
Rico."

*County, Fla.*, 762 F.2d 912, 918–921 (11mo Cir. 1985), *cert.* denegado 54 L.W. 3461; *Rose* v. *State of Neb.*, 748 F.2d 1258, 1263–1264 (8vo Cir. 1984), *cert.* denegado 54 L.W. 3223; *Teresa Diane P.* v. *Alief Independent Sch. Dist.*, 744 F.2d 484, 491 (5to Cir. 1984); *Quackenbush* v. *Johnson City School Dist.*, 716 F.2d 141, 147–148 (2do Cir. 1983); *Bonadonna* v. *Cooperman*, 619 F. Supp. 401, 416 (D.C. N.J. 1985); *Stock* v. *Massachusetts Hosp. School*, 476 N.E.2d 210, 212–213 (Mass. 1985), *cert.* denegado 54 L.W. 3225.

 La Ley Federal de Educación para Niños con Impedimentos provee para que una parte perjudicada por una determinación administrativa acuda al foro judicial para su revisión. Allí se recibirá el récord del proceso administrativo y se podrá presentar nueva evidencia. 20 U.S.C. sec. 1415(e)(2). Este lenguaje claramente presupone la existencia de una audiencia administrativa. Por lo tanto, a quien se le ha negado en su totalidad el debido proceso que le garantiza la Ley y la Constitución, tiene derecho a invocar el remedio de la Sec. 1983 así como los honorarios de abogados que concede la Sec. 1988. (⁹)

 La actuación de los funcionarios estatales, en el caso ante nos, de privar injustificadamente a unos niños de los servicios educativos especializados requeridos por una ley especial, de no cumplir con ninguna de las garantías procesales antes de terminar los mismos, y luego, negarse a atender sin

---

(⁹) Esta sección dispone en lo pertinente que:

"... In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318 [20 U.S.C. sec. 1681 *et seq.*], [42 U.S.C. sec. 2000d *et seq.*], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. sec. 1988.

Esta disposición ha sido interpretada como que sólo permite la concesión de honorarios cuando se instan procedimientos judiciales para poner en vigor los derechos civiles allí enumerados. *North Carolina Dept. of Transp.* v. *Crest Street Community Council*, 55 L.W. 4001 (1986).

explicación alguna los continuos reclamos para iniciar el trámite administrativo, constituye una crasa y deliberada violación del derecho a un debido proceso de ley garantizado tanto por la Constitución del Estado Libre Asociado de Puerto Rico como por la de Estados Unidos. Esto forzó a los demandantes a acudir al foro judicial a vindicar tal derecho. En estas circunstancias, no es incompatible con la Ley Federal de Educación a Niños con Impedimentos que se permita la invocación de la Sec. 1983. Siendo la partida de honorarios de abogados complemento indispensable del remedio a otorgarse, procede su concesión al amparo de la Ley Federal de Derechos Civiles, aun en el tribunal estatal. *Maine* v. *Thiboutot*, supra, págs. 10–11.

El resultado no podría ser otro. De no concederse los honorarios en los tribunales estatales, la mayoría de los demandantes no tendrían otra alternativa que ir al foro federal en busca de un remedio completo. Se frustraría la política pública instaurada en *Acevedo* v. *Srio. Servicios Sociales*, supra, de que preferentemente sean nuestros tribunales los que vindiquen los derechos civiles. Esta posición es acorde con la política pública y con el carácter general y amplio de la jurisdicción de nuestros tribunales. También es la más justa. Precisamente esa fue la intención legislativa al enmendar el Código de Enjuiciamiento Civil para permitir que los tribunales de Puerto Rico pudieran emitir un *injunction* del mismo alcance que los disponibles en el foro federal, para vindicar las violaciones a los derechos civiles fundamentales por funcionarios públicos en el descargo de sus obligaciones. Véanse: *Pierson Muller I* v. *Feijoó*, 106 D.P.R. 838, 852 (1978); *Pedraza Rivera* v. *Collazo Collazo*, 108 D.P.R. 272, 275 (1979); M. Naveira de Rodón, *Inter-Relación entre el Foro Local, el Foro Federal y la Reforma Judicial*, 36 Rev. C. Abo. P.R. 951, 984–985 (1975).

■ No debemos perder de vista que la eficacia de la Ley Federal de Derechos Civiles depende considerablemente de que se utilice efectivamente por los desvalidos para proteger sus derechos civiles. La Sec. 1988 de la Ley Federal asegura el acceso efectivo al proceso judicial a las personas agraviadas. Los honorarios de abogado bajo esta sección constituyen un remedio necesario para que la Ley de Derechos Civiles no se convierta en una declaración en el vacío sin utilidad práctica, para que el ciudadano promedio pueda hacer valer sus derechos. Informe del Senado Núm. 94–1011, 94th Cong., 2d Sess. 1976, U.S. Code Cong. & Admin. News 5909–5910; *Newman* v. *Piggie Park Enterprises*, 390 U.S. 400 (1968); *Hensley* v. *Eckerhart*, 461 U.S. 424 (1983); Nota, *The Scope of the Civil Rights Attorney's Fees Awards Act after Maine v. Thiboutot, Maher v. Gagne, and Supreme Court of Virginia v. Consumers Union*, 66 Iowa L. Rev. 1301 (1981). ([10]) Pero estos honorarios no son de carácter mandatorio. Como regla general, la ley confiere al tribunal discreción para concederlos, a menos que medien circunstancias especiales. *Evans* v. *Jeff*, 54 L.W. 4359 (1986).

---

([10]) Diversos tribunales estatales han seguido la norma de conceder honorarios de abogados al ejercer jurisdicción concurrente bajo la Ley Federal de Derechos Civiles. *Davis* v. *Everett*, 443 So.2d 1232 (Ala. 1983); *Filipino Accountants* v. *State Bd. of Account.*, 204 Cal. Rptr. 913 (Cal. App. 1984); *Intern. Soc. for Krishna* v. *Colo. State Bar*, 673 P.2d 368 (Colo. 1983); *Henderson* v. *District of Columbia*, 493 A.2d 982 (D.C. App. 1985); *Logan* v. *Johnson*, 293 S.E.2d 47 (Ga. App. 1982); *Stanton* v. *Godfrey*, 415 N.E.2d 103 (Ind. App. 1981); *Blessum* v. *Howard Cty. Bd. of Sup'rs*, 295 N.W.2d 836 (Iowa 1980); *Wyman* v. *Inhabitants of Town of Skowhegan*, 464 A.2d 181 (1983); *Stratos* v. *Department of Public Welfare*, 439 N.E.2d 778 (Mass. 1982); *Royer* v. *Adams*, 437 A.2d 316 (N.H. 1981); *Ramírez* v. *County of Hudson*, 404 A.2d 1271 (N.J. Super. Ct. 1979); *Haussman by Schneider* v. *Kirby*, 468 N.Y.S.2d 375 (A.D. 1983); *Morrell* v. *Com., Unemploy. Comp. Bd. of Rev.*, 485 A.2d 1214 (Pa. Commw. 1984); *O'Connors* v. *Helfgott*, 481 A.2d 388 (R.I. 1984); *Lange* v. *Nature Conservancy Inc.*, 601 P.2d 963 (Wash. App. 1979); *Thompson* v. *Village of Hales Corners*, 340 N.W.2d 704 (Wis. 1983); *Board of Trustees, etc.* v. *Holso*, 584 P.2d 1009 (Wyo. 1978).

 Por último, debemos aclarar que los honorarios que autoriza la Sec. 1988 no son por temeridad. Nuestro ordenamiento sanciona la temeridad de un litigante perdidoso mediante el pago de honorarios de abogado, Regla 44.1 (d) de Procedimiento Civil, con excepción del Estado. *Colondres Vélez* v. *Bayrón Vélez*, 114 D.P.R. 833 (1983); *Acevedo* v. *E.L.A.*, 91 D.P.R. 796 (1965). No obstante, la Sec. 1988 opera independientemente de la temeridad en que hayan incurrido las partes. Su propósito no es sancionar, sino proveer un remedio completo para fomentar la vindicación de derechos civiles. Su imposición procede contra los funcionarios del Estado.

 Por estas razones concluimos que en el ejercicio de su jurisdicción concurrente al amparo de la Ley Federal de Derechos Civiles, un tribunal de Puerto Rico puede conceder honorarios de abogado bajo la Sec. 1988. (¹¹)

Por los anteriores fundamentos, *debe confirmarse la sentencia recurrida.*

El Juez Asociado Señor Rebollo López concurre en el resultado con opinión escrita. El Juez Asociado Señor Ortiz no intervino.

—O—

Opinión concurrente emitida por el Juez Asociado Señor Rebollo López.

Estamos completamente de acuerdo con la determinación que hace el Tribunal a los efectos de que los *hechos* que dan lugar al presente recurso constituyen base suficiente para la imposición de responsabilidad por los daños causados a los niños impedidos y sus progenitores. *De hecho resulta verda-*

---

(¹¹) En vista de esta conclusión no es necesario determinar en este caso si la Ley Núm. 12 de 8 de agosto de 1974 (32 L.P.R.A. sec. 3524) autoriza la concesión de honorarios de abogados.

*deramente difícil comprender cómo unos funcionarios públicos
son capaces de incurrir en un patrón de conducta que demues-
tra tal grado de insensibilidad.* El Pueblo de Puerto Rico cier-
tamente puede prescindir de los servicios de esa clase de servi-
dores públicos.

Concurrimos plenamente con el *resultado* a que llega una
mayoría de los integrantes de este Tribunal, de que procede la
reparación de los daños sufridos por la parte demandante-re-
currida. *No compartimos totalmente, sin embargo, los funda-
mentos en que se basa la mayoría para llegar al resultado an-
tes mencionado.* Somos del criterio que el análisis realizado
para llegar al mismo es uno incompleto; ello debido a que la-
mentablemente se incurre en un error de enfoque.

En primer lugar, el Tribunal circunscribe su análisis a
una interpretación estatutaria bajo la *premisa errónea* de que
es aplicable a esta situación la "norma de autolimitación ju-
dicial" relativa a cuestiones constitucionales; cuya norma en
lo pertinente, como es sabido, le impone el deber a un tribunal
de abstenerse de entrar a *juzgar la validez constitucional de
un estatuto* cuando le es factible resolver la cuestión planteada
por otros fundamentos, la cual claramente no es la situación
en el presente caso. La actuación del Tribunal tiene el resul-
tado nocivo de limitar la "razón de pedir" de los niños impedi-
dos de nuestra patria; "privándolos", como veremos más ade-
lante, de su verdadera y real "base jurídica" para reclamar la
educación especial: la Constitución del Estado Libre Asociado
de Puerto Rico.

En segundo lugar, el craso error de enfoque cometido lleva
al Tribunal a equivocadamente resolver que la compensación
decretada resulta procedente *únicamente como consecuencia*
de la "crasa violación del debido proceso de ley *garantizado
por las leyes federales y estatales que crean los programas de
educación remedial para los niños impedidos*" cometida por
los funcionarios del Departamento de Instrucción Pública de
Puerto Rico; esto es, como resultado de la "violación arbitra-

ria e injustificada de [los] *deberes* impuestos" a estos funcionarios por las mencionadas leyes especiales. (Énfasis suplido.) Op. Tribunal, pág. 603.

En tercer término, el establecimiento de la norma a los efectos de que el incumplimiento o violación, por parte de funcionarios del Estado, de unos *deberes* que le impone un estatuto constituye "fuente de responsabilidad" en daños y perjuicios puede tener consecuencias sumamente graves y peligrosas para el Estado. Dicha norma abre una "caja de pandora" cuyas posibilidades son ilimitadas al ser la misma aplicada a otras situaciones o áreas del derecho.

I

La Sec. 5 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Vol. 1, ed. 1982, pág. 271, dispone:

Sección 5. [*Instrucción pública*]

*Toda* persona *tiene derecho a una educación* que propenda al pleno desarollo de su personalidad y al fortalecimiento del respeto de los derechos del hombre y de las libertades fundamentales. Habrá *un sistema* de instrucción pública el cual será libre y enteramente no sectario. La enseñanza será gratuita en la escuela primaria y secundaria y, hasta donde las facilidades del Estado lo permitan, se hará obligatoria para la escuela primaria. La asistencia obligatoria a las escuelas públicas primarias, hasta donde las facilidades del Estado lo permitan, según se dispone en la presente, no se interpretará como aplicable a aquellos que reciban instrucción primaria en escuelas establecidas bajo auspicios no gubernamentales. No se utilizará propiedad ni fondos públicos para el sostenimiento de escuelas o instituciones educativas que no sean las del Estado. Nada de lo contenido en esta disposición impedirá que el Estado pueda prestar a cualquier niño servicios no educativos establecidos por ley para protección o bienestar de la niñez.

[Según fue enmendada en las elecciones generales del 4 de noviembre de 1952, ef. Enero 29, 1953.] (Énfasis suplido.)

No obstante, el hecho de que el debate que hubo en la Convención Constituyente referente a la aprobación de la antes transcrita disposición constitucional arroja dudas sobre si los "constituyentes" consideraron que estaban incorporando en la Constitución un "derecho" como tal, [1] este Tribunal en *Pagán Hernández* v. *U.P.R.*, 107 D.P.R. 720, 737–738 (1978), reconoció que la referida Sec. 5 efectivamente consagra como derecho constitucional, y hasta fundamental, el "derecho a la educación". [2] Recientemente, en *Amy* v. *Adm. Deporte Hípico*, 116 D.P.R. 414 (1985), implícitamente resolvimos que el "derecho a la vida" —derecho inalienable del hombre— consagrado por la Sec. 7 del Art. II de nuestra Constitución a su vez comprende e incluye "derechos fundamentales" tales como el *derecho a la educación*, el derecho al trabajo o a un empleo, y el derecho a un nivel adecuado de vida.

De manera pues que, *según nuestra jurisprudencia*, la determinación o conclusión a los efectos que el "derecho a la educación" *es uno constitucional y fundamental* surge del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico: en forma expresa de las disposiciones de la Sec. 5 y, de manera implícita, de las de la Sec. 7. [3]

---

[1] Véase 2 Diario de Sesiones de la Convención Constituyente 1450 (1952).

[2] En *Pagán Hernández* v. *U.P.R.*, 107 D.P.R. 720, 738 (1978), uno de los puntos principales en controversia lo constituía el derecho a la educación que le asistía al demandante-recurrido. Se resolvió que *precisamente* por tratarse de un derecho constitucional, el mismo no podía entenderse renunciado implícitamente; esto es, que cuando se trata de derechos fundamentales, las renuncias a los mismos "deben ser 'expresas y no presuntas, así como voluntarias y efectuadas con pleno conocimiento de causa' ".

[3] Procede que se enfatice que durante el transcurso del presente litigio el propio Estado aceptó que el derecho a la educación es uno de rango constitucional, el cual surge de la Sec. 5, Art. II, de nuestra Constitución. Véase Memorando de Derecho de 12 de julio de 1984, pág. 5, radicado ante el Tribunal Superior de Puerto Rico, Sala de San Juan, el cual constituye el *exhibit* VII del Recurso de Revisión radicado por el Procurador General de Puerto Rico ante este Tribunal.

Y es que ello tiene que ser así. (⁴) En palabras de uno de los señores delegados de la referida Convención Constituyente: "¿De qué vale una carta de derechos si vamos a tener un pueblo que no va a poder leer . . ." ni entender la misma? (⁵) *Preguntamos nosotros:* ¿no corre peligro de ser derrocado un sistema democrático de gobierno mientras permita que un sector de su ciudadanía permanezca en el analfabetismo y la ignorancia? En los países en que desafortunadamente han dominado por años las dictaduras, ¿acaso las mismas no han sido, en gran medida, el resultado precisamente del desconocimiento e ignorancia de las controversias por parte de un gran sector de dichos pueblos? *A nuestro juicio, el derecho a la educación en Puerto Rico es uno de rango constitucional y fundamental; no cabe otra interpretación. El mismo, en adición, resulta de cardinal importancia para la subsistencia de nuestro actual sistema de gobierno y para el crecimiento y mejoramiento del mismo.* No debemos perder de vista que la delincuencia y la explotación del menos afortunado precisamente se nutren del analfabetismo y de la ignorancia de un pueblo. No cabe interpretar nuestra Constitución en una forma que fomente el discrimen: la falta de fondos para la educación nunca afecta a la clase pudiente; la que siempre resulta perjudicada por ello lo es la clase menos afortunada.

*No concebimos la existencia de razón o fundamento alguno que válidamente pueda oponerse al derecho fundamental de nuestros ciudadanos a, por lo menos, recibir una educación básica.* Ese derecho, *con mayor razón*, cobija y protege a nuestros niños impedidos.

## II

Acorde con todo lo anteriormente expresado, *la verdadera y principal fuente* en nuestra jurisdicción para la compensa-

---

(⁴) Véase, en adición, P. Muñoz Amato, *El Derecho a la educación y la libertad académica,* 24 Rev. C. Abo. P.R. 463, 468 (1964).

(⁵) Sr. Lino Padrón Rivera, 2 Diario de Sesiones, *supra,* pág. 1468.

ción de daños en casos como el que nos ocupa lo constituye *la violación por parte del Estado del derecho, garantizado por nuestra Constitución, que tiene todo ciudadano a una educación;* constituyendo una *fuente secundaria* de responsabilidad la "violación de los deberes" que le impone la Ley Núm. 21 de 22 de julio de 1977 —que creó un Programa de Educación Especial para Niños con Impedimentos— a los funcionarios del Estado. De hecho, lo que hizo la referida ley especial fue "implementar" la antes mencionada disposición constitucional, estableciendo unas guías generales y proveyendo unos beneficios específicos en relación con los niños impedidos.

Es por ello que somos del criterio que no resulta necesario hacer malabares —como lo hace la opinión mayoritaria— con la citada Ley Núm. 21, forzando una interpretación de la misma con el propósito de alcanzar la conclusión deseada de que procede compensar los daños sufridos por los niños impedidos como consecuencia del obvio incumplimiento del Estado con la *obligación constitucional* de proveerles la educación que su condición física requería.

Para poder hacer cumplida justicia en casos como el de autos ni tan siquiera existe la necesidad de recurrir a lo resuelto por este Tribunal en *González* v. *Ramírez Cuerda,* 88 D.P.R. 125, 133 (1963), a los efectos de que "cuando en una constitución se establece una norma general *no se necesita de legislación para implementarla".* (Énfasis suplido.)

Afortunadamente contamos —en adición a la referida disposición constitucional— con lo preceptuado por el Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141, en relación con el cual nuestra jurisprudencia ha reconocido que el concepto de culpa que el mismo contempla es tan *"infinitamente amplio* como la conducta de los seres humanos *e incluye cualquier falta* de una persona *que produce un mal o daño".* (Énfasis suplido.) *Colón* v. *Romero Barceló,* 112 D.P.R. 573, 579 (1982) ; *Gierbolini* v. *Employers Fire Ins. Co.,* 104 D.P.R. 853 (1976).

Por otro lado, merece que se enfatice el hecho de que en Puerto Rico el sistema de instrucción pública es uno integral, a nivel nacional, controlado desde un departamento de educación central. En armonía con lo dispuesto por la citada Sec. 5 del Art. II de nuestra Constitución, ello significa, entre otras, que el Gobierno de Puerto Rico viene en la obligación de proveer la *misma calidad de enseñanza,* y las *mismas oportunidades,* a *todo* niño de edad escolar, independientemente de su condición física y del lugar o pueblo donde resida.

*La importancia de que el derecho de estos niños impedidos a que el Estado le provea una educación especial sea, en lugar de estatutario, uno de rango constitucional* —consecuencia de que en nuestra jurisdicción toda persona tiene un derecho constitucional a una educación— *resulta obvio.* Basta señalar que una ley aprobada por la Asamblea Legislativa puede ser derogada con suma facilidad mediante el voto mayoritario de los componentes de la Asamblea Legislativa; no así nuestra Constitución, la cual únicamente puede ser enmendada mediante referéndum especial al efecto por el voto mayoritario de nuestro Pueblo. Sec. 1, Art. VII, Constitución del Estado Libre Asociado de Puerto Rico. *Ello prácticamente garantiza que nuestros niños impedidos siempre tendrán la educación especial que necesitan y merecen.*

### III

Distinto ocurre en la jurisdicción federal. La Constitución de Estados Unidos no garantiza en forma expresa el derecho a la educación. Por otro lado, el Tribunal Supremo federal se ha negado a reconocer el derecho a la educación como uno fundamental. Véanse: *San Antonio School District* v. *Rodríguez,* 411 U.S. 1 (1973) ; *Plyler* v. *Doe,* 457 U.S. 202 (1982) ; *Papasan* v. *Allain,* 54 L.W. 4939 (1986).

En adición a lo antes expresado, debe mantenerse presente que en la mayoría de los cincuenta estados que componen la Unión Americana el sistema de enseñanza no es uno centrali-

zado. De hecho, la calidad de la enseñanza —y las oportunidades— que se le provee a los estudiantes inclusive puede variar de condado (*county*) a condado dentro de un mismo estado. Ello depende de la apropiación de fondos que para el sistema educativo provea no sólo el estado en sí, sino las juntas de los diferentes distritos escolares que controlan o gobiernan la situación en dichos condados. (6) Es por ello que en la mayoría de los casos de niños impedidos que requieren educación especial se tiene que acudir a la esfera federal invocándose la Ley Federal de Educación para Niños con Impedimentos, Ley Púb. Núm. 94–142 (20 U.S.C. sec. 1400 *et seq.*). *Cf. Plyler* v. *Doe,* ante, teniendo los ciudadanos a su disposición la Ley Federal de Derechos Civiles, 42 U.S.C. sec. 1983, para vindicar sus derechos bajo la ley especial. *Smith* v. *Robinson,* 458 U.S. 992 (1984). Ello naturalmente por no contarse en esos estados, por lo general, con una disposición constitucional como la contenida en la Constitución del Estado Libre Asociado de Puerto Rico.

## IV

En resumen, somos de la opinión que en nuestra jurisdicción —*aun cuando no existiera ley especial, federal o local, a esos efectos*— un niño impedido de edad escolar puede *exigir* del Gobierno que le provea educación especial a base de la garantía provista en las Secs. 5 y 7, Art. II, de nuestra Constitución. Dicho niño, en adición, puede reclamar y obtener indemnización por los daños sufridos como consecuencia del incumplimiento de dicha obligación, *fundándose exclusivamente* en la referida garantía constitucional en interacción con las disposiciones del Art. 1802 del Código Civil. Nada de lo anteriormente expresado, naturalmente, resulta un obstáculo para que los niños con impedimentos de nuestro Puerto

---

(6) Véase, en general, E. Reutter, *The Law of Public Education,* 3ra ed., Mineola, New York, Foundation Press, 1985.

Rico puedan aprovecharse y reclamar los beneficios específicos que actualmente les provee la Ley Núm. 21 de 22 de julio de 1977.