# 2009 DTA 95

**TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE BAYAMÓN
PANEL V**

GRATACOS WYS, MAYLEEN
Apelante

v.

RAMÓN ALMONTE FONT
Apelado

Núm. KLAN-08-01443

San Juan, Puerto Rico, a 29 de junio de 2009

Panel integrado por su Presidente, el Juez Arbona Lago,
la Juez Cotto Vives y el Juez Salas Soler

Salas Soler, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

La Sra. Mayleen Gratacos Wys, (la apelante) acude ante este Foro, en solicitud de apelación de la Sentencia Parcial dictada por el Tribunal de Primera Instancia (TPI), Región Judicial de Bayamón, el 20 de febrero de 2008. La sentencia en cuestión desestimó la acción de daños y perjuicios presentada por la apelante en el caso DAC1995-0625 sobre División de Bienes Gananciales, contra el Sr. Ramón Almonte Font, al amparo del Art. 1313 del Código Civil de Puerto Rico, 31 L.P.R.A. 3672.

**Hechos**

El presente caso comenzó con la radicación de la demanda de divorcio, el 5 de mayo de 1992, entre la apelante y el Sr. Ramón Almonte Font (el apelado). Alegadamente, durante el matrimonio, Almonte adquirió, enajenó y manejó bienes muebles, tales como valores, bonos, acciones y otros similares por más de CIEN MILLONES DE DÓLARES ($100,000,000.00), administrándolos unilateralmente, sin la intervención de la apelante y sin que ésta tuviera conocimiento o participación alguna de las transacciones realizadas. Al momento de la separación, así como durante el divorcio, la Apelante alega, que el Apelado alegó que no existía ni un sólo centavo de bienes de esa naturaleza. Durante el matrimonio, el período de separación ni después del divorcio, rindió cuentas de la administración de tales bienes o del uso y destino de los mismos. La Sentencia de Divorcio se emitió el 21 de julio y se notificó el 2 de agosto de 1994.

Durante el proceso de este caso, el Tribunal designó al Dr. Antonio J. González como Contador Partidor. Éste celebró reuniones con las partes y rindió informes preliminares. Detuvo sus gestiones señalando que era necesario que el Tribunal resolviera ciertas controversias antes de que pudiera producir un cuaderno particional.

Luego de muchos años de litigación y de múltiples incidentes procesales, las partes prepararon un *Informe de Conferencia Preliminar entre Abogados,* el que eventualmente fue enmendado. En este informe, las partes estipularon lo siguiente: [KLAN-2008-01030, Anejo 11, págs. 134-139] **[1]**

*A. SOBRE LOS HECHOS:*

*1. Las partes contrajeron matrimonio el día 12 de julio de 1985.*

*2. La sentencia de divorcio se emitió el 21 de julio de 1994 y se notificó el 2 de agosto de 1994.*

*3. Al momento de contraer matrimonio, el señor Almonte trabajaba para la firma de corretaje Kidder & Peabody.*

*4. Al momento de contraer matrimonio, el señor Almonte había finalizado estudios de Administración de Empresas, una maestría y un juris doctor.*

*5. Al momento de contraer matrimonio, el señor Almonte tenía 35 años de edad y la señora Gratacós tenía 22 años de edad.*

*6. El 12 de junio de 1987, Almonte dejó su trabajo en Kidder & Peabody y comenzó a trabajar con Paine Webber.*

7. *Las siguientes obras de arte pertenecen a la comunidad de bienes, ya que son de naturaleza ganancial:*

*A. Acróbata, Lorenzo Homar*

*B. Los Músicos, Lorenzo Homar*

*C. Portfolio, Lenon*

*D. Una Historia Inventada, Marta Pérez*

*E. Manuela, Marta Pérez*

*F. Locomotoras, Figueroa*

8. *Al momento del divorcio existían las siguientes cuentas:*

*A. Cuentas IRA*

*1. Paine Webber – Valor $8,000.00, a nombre del demandado*

*B. Cuentas Bancarias*

*1. Citibank, a nombre del demandado, Valor $180.43*

9. *Los siguientes bienes inmuebles son propiedad de la comunidad de bienes, por tener naturaleza ganancial:*

*a. Apartamento 1201, Condominio Tenerife, San Juan (No tiene hipoteca porque el demandado la saldó después del divorcio.*

*b. Apartamento #10, Villas de Fairways, Dorado Beach, Dorado, P.R.*

10. *Al momento del divorcio, la sociedad de gananciales tenía dos carritos de golf.*

**B. SOBRE LA PRUEBA DOCUMENTAL**

*Exhibits de ambas partes, por estipulación:*

*Exhibit 1*

*Escritura de capitulaciones matrimoniales, entre demandante y demandado, de 12 de julio de 1985.*

*Exhibit 2*

*Declaración jurada de la demandante, reconociendo bienes privativos del demandado, de fecha 12 de julio de 1985.*

*Exhibit 3*

*Sentencia de divorcio de 21 de julio de 1994, notificada el 2 de agosto de 1994.*

*Exhibit 4ª al 4j*

*Planillas de Contribución Sobre Ingresos de Puerto Rico, años 1985 al 1994 y sus respectivos anejos.*

*Exhibit 5ª a 5c*

*Estados de cuentas de inversiones de Kidder Peabody & Co., número 15 POF 039°23, de julio de 1985 a julio de 1987*

*Exhibit 6-8*

*Estados de cuentas de inversiones, de Paine Webber*

*Exhibits 9ª al 9j*

*Documentos relacionados con al sociedad especial The Greens.*

*Exhibit 10ª al 10d*

*Documentos relacionados con adquisición de Fairways*

*Exhibits 11ª al 11c*

*Documentos sobre compra de Tenerife*

*Exhibit 12ª al 12c*

*Formas 1099 de Kidder Peabody de cuenta número 15P-0F039-023, años 1985, 1986, 1987*

*Exhibit 13*

*Contrato entre Paine Webber y el demdando, sobre pago de la bonificación de $1,320,000.00, para adquirir sus servicios como corredor de valores (area retail), para la empresa y dos cartas*

*Exhibit 14*

*Venta de acciones privativas de Kidder Peabody por la empresa, cheque de 21 de marzo de 1988, forma 1099-1988 de Kidder Peabody, documentos relativos a dicha venta, estados de inversión Kidder Peabody 11K-OF488-000 25/7/1985, 27/3/1986 y 6/29/1989 (15 páginas)*

*Exhibits 15ª al 15g*

*Formas 1099 de Paine Webber*

*a. Forma 1099 JX09315-60-1987*

*b. Forma 1099 JX90066-60-1988 al 1991*

*c. M9 1991 al 92*

*Exhibit 16*

*Estado de Employee Deferred Cosmp. Acc. de Paine Webber #XR-44029YA de julio y agosto de 1988*

*Exhibit 17*

*Planillas Sociedad Especial The Greens*

*Exhibit 18*

*a. PIPE Mayleen Gratacós 1992 y 1993*

*b. Documentos radicados como gastos 8 de julio de 1003*

*c. PIPE y anejo*

*Exhibit 19*

*a. Factura Marti Gutiérrez Final Art*

*b. Cheque de $60,000.00 relacionados con 19(a)*

*Exhibit 20*

*Tasación de obras ordenada por el Tribunal, de Raimundo Figueroa, de 13 de marzo de 1998 y 27 de octubre de 1998*

*Exhibit 21*

*Carta de Ramón Almonte a Ileana Colón de 13 de marzo de 1986 sobre gastos e intereses pagados y anejos*

*Exhibit 22*

*Carta y dos cheques*

*Exhibit 23*

*Cartas de Ramón Almonte a Ileana Colón de 4 de abril de 1986*

*Exhibit 24*

*Cartas entre Ramón Almonte y Adamina Soto*

*Exhibit 25*

*Client Qualification Form Options JX09315-60*

*Exhibit 26*

*Carta de 8 de marzo de 1990 de Almonte a Rosa Vélez con anejos*

*Exhibit 27*

*(a) Tasación The Greens y Fairways*

*(b) Tasación Tenerife*

*Exhibit 28*

*PIPE Almonte, octubre 1992*

*Exhibit 29*

*Cartas entre Miguel Ferrer y Ramón Almonte*

*Exhibit 30*

*Memo de 30 de septiembre de 1986 de Nigel W. Sadd*

*Exhibit 31*

*Carta a Ramón Almonte a Carlos Nieves de 12 de junio de 1986 y 2 anejos*

*Exhibit 32*

*Documentos de adquisición auto Mercedes 1980 450 L por $28,900.00*

*Exhibit 33*

*(a) Pagaré Condominio Marlin Towers*

*(b) Carta y cheque*

*(c) Escritura*

*Exhibit 34*

*Documentos relativos a acuerdo de suscripción y venta de acciones de Computer Components*

*Exhibit 35*

*Escritura Número 2 de Capitulaciones Matrimoniales entre el señor Pereira y la señora Gratacós*

*Exhibit 36*

*Carta de Ramón Almonte a Ileana Colón de 7 de abril de 1986*

*Exhibit 37*

*Carta de 15 de abril de 1992 de Ramón Almonte a Rosa Vélez con anejos*

*Exhibit 38*

*Comunicación de 11 de marzo de 1992 de Almonte a Rosa Vélez*

*Exhibit 39*

*Memo de Almonte a Carlo de 9 de diciembre de 1986 y anejos*

Así las cosas, el 14 de agosto de 1995, la apelante radicó demanda de División de Sociedad Legal de Gananciales y Daños y Perjuicios contra el apelado. Entre las alegaciones que señalara la apelante en esta demanda, expresó que:

*"10. El demandado es responsable a la parte demandante por sus actuaciones negligentes en la administración de los bienes de la sociedad legal de gananciales, cuya negligencia se adjudica al momento de disolverse la sociedad legal de gananciales, conforme lo establece el Artículo 1313 del Código Civil de Puerto Rico (31 LPRA 3672)." [KLAN-2008-01030, Anejo 22, págs. 298-303]*

Esta alegación fue negada por el apelado. Debido a las varias controversias relacionadas a este caso, el 13 de agosto de 2007 comenzó el juicio del caso, prolongándose hasta el 16 de octubre de 2007 y celebrándose (10) vistas. Como parte de la prueba presentada, la parte demandante presentó los testimonios del Sr. Francisco Luis, (Contador Público Autorizado), el Sr. José Antonio Herrero, (Economista) y el Sr. Carlos Urrutia. El testimonio del Sr. Urrutia, el cual fue ofrecido como perito, no fue admitido por el tribunal. El apelado se opuso señalando y probando, que el informe realizado por el Sr. Urrutia era de naturaleza hipotética para los años 1994 al 2004 y éstos hacían referencia a los años posteriores a la disolución de la sociedad de gananciales. Por su parte, la parte demandada expresó que *"... era correcta la alegación de la parte demandada,..."* por lo que el tribunal determinó, mediante resolución del 16 de octubre de 2007, ha lugar a la solicitud de exclusión de dicho testimonio. [KLAN-2008-01030, Anejo 14, págs. 165-170]

El 16 de octubre de 2007, la parte demandante sometió su caso ante el tribual incluyendo el *Informe Enmendado de Conferencia Preliminar entre Abogados.* Por su parte, el apelado, solicitó la autorización para radicar en Sala una Moción sobre Desestimación al amparo de la Regla 39.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, Regla 39.2, de la reclamación por daños y perjuicios que forma parte del litigio sobre la liquidación de bienes gananciales.

El tribunal le concedió tiempo a la parte apelante para que refutara dicha solicitud. Luego de argumentada la moción, el 20 de febrero de 2008, el TPI declaró mediante Sentencia Parcial, CON LUGAR dicha Solicitud.

Inconforme, y luego de trámites procesales adicionales, la apelante recurrió el 15 de septiembre de 2008 ante este foro, en recurso de apelación, imputándole al TPI la comisión de los siguientes errores:

Primer Error:

*"Cometió error el TPI al resolver que la apelante no presentó evidencia suficiente sobre negligencia, fraude, mala administración o intención de actuar de tal manera por parte del demandado y al desestimar la reclamación de daños."*

Segundo Error:

*"Cometió error el TPI al confundir el propósito para el que se desfilo determinada prueba y como consecuencia de ello formular determinaciones que nada tienen que ver con las controversias planteadas."*

Tercer Error:

*"Cometió error el TPI al excluir el testimonio del testigo perito Sr. Carlos Urrutia y luego desestimar la acción de daños."*

Cuarto Error:

*"Cometió error el TPI al indicar en más de una ocasión que debía desestimar la demanda en este caso porque en su opinión no se ha probado nada, así como al registrar una sentencia parcial después de haberse solicitado su recusación."*

El 23 de diciembre de 2008, la apelante radicó la *Moción Sometiendo Transcripción de la Prueba*, en la que solicitó al Tribunal de Apelaciones (TA) que ordenara la transferencia de la transcripción original del juicio que se encontraba en el caso KLAN-2008-01030, al expediente de este caso. En Resolución del 14 de enero de 2009, el TA accedió a lo solicitado.

Con el beneficio de las posiciones de ambas partes y considerando sus planteamientos a la luz de la jurisprudencia, procedemos a resolver la controversia aquí presentada. [2]

**Exposición y Análisis**

Ante nos, la apelante hace cuatro (4) señalamientos de error que en esencia van dirigidos a impugnar la apreciación de la prueba hecha por el Tribunal de Primera Instancia. Por estar íntimamente relacionados, los discutiremos solidariamente.

La norma imperante en nuestra jurisdicción es que los tribunales apelativos no intervendrán con la apreciación y adjudicación de credibilidad que en relación con la prueba testifical haya realizado el juzgador de los hechos a nivel de instancia en ausencia de error manifiesto, pasión, prejuicio o parcialidad. Los foros apelativos no intervendremos con las determinaciones de hechos, la apreciación de la prueba y las adjudicaciones de credibilidad efectuadas por el foro primario. *Meléndez v. Asoc. Hosp. del Maestro,* 156 D.P.R. 828, 863 (2002); *Colón y otros v. K-Mart y otros,* 154 D.P.R. 510, 520 (2001); *Trinidad García v. Chade,* 153 D.P.R. 280, 291 (2001); *Mun. de Ponce v. A.C. et al.,* 153 D.P.R. 1, 27 (2000); *Monllor v. Soc. de Gananciales,* 138 D.P.R. 600, 610 (1995).

En ausencia de esa demostración, la determinación a que llegue el foro recurrido será merecedora de gran deferencia por parte del tribunal apelativo por cuanto el juzgador en instancia es quien, de ordinario, está en mejor posición para aquilatar la prueba testifical desfilada, ya que él fue quién oyó y vio declarar a los testigos como en el presente caso. *Pueblo v. Negrón,* 143 D.P.R. 1 (1997); *Pueblo v. Chévere Heredia,* 139 D.P.R. 1, 4 (1995); *Pueblo v. Maldonado Rosa,* 135 D.P.R. 563, 568 (1994); *Pueblo v. Bonilla Romero,* 120 D.P.R. 92, 111 (1987); *Pueblo v. Cabán Torres,* 117 D.P.R. 645, 648 (1986), y *Pueblo v. Rivera Santiago,* 95 D.P.R. 584, 586 (1967).

El Tribunal Supremo de los Estados Unidos ha aplicado con igual fortaleza la misma doctrina sobre la deferencia debida al tribunal de instancia en la evaluación y aquilatación de los testigos y sus testimonios. La doctrina es la misma. Los tribunales apelativos extienden una gran deferencia a los tribunales de instancia en materia de la apreciación y observación del *"demeanor"* de los testigos y el testimonio de éstos. El caso seminal en esta materia lo es *Pullman-Standard v. Swint,* 456 U.S. 273 (1982). El Supremo Federal expresa de forma tajante la referida doctrina de la siguiente manera:

*"Rule requiring that findings of fact cannot be set aside unless clearly erroneous does not make exceptions*

*or purport to exclude certain categories of factual findings from the obligation of a Court of Appeals to accept a district court findings unless clearly erroneous, does not divide facts into categories and does not apply to conclusions of law."*

Recientemente y en lo pertinente, el Tribunal Supremo de Puerto Rico *reiteró* en *Jorge Suárez Cáceres v. Comisión Estatal de Elecciones y Otros*, opinión del 29 de abril de 2009; 179 DPR _____ (2009), **2009 JTS 69**, en cuanto a la Regla 43.2 de Procedimiento Civil, (32 L.P.R.A., Ap. III, R. 43.2), que: *"[l]as determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el Tribunal Sentenciador para juzgar la credibilidad de los testigos. Tomando esta norma como base, usualmente* **los tribunales apelativos no intervenimos ni alteramos innecesariamente las determinaciones de hechos que hayan formulado los tribunales de primera instancia luego de admitir y aquilatar la prueba presentada durante el juicio."** Además, un foro apelativo no puede descartar y sustituir por sus propias apreciaciones, basadas en un examen del expediente del caso, las determinaciones tajantes y ponderadas del foro de instancia". *Quiles Pérez v. Cardona Rosa*, res. el 4 de junio del 2007, 171 D.P.R. ___, **2007 J.T.S. 116**; *Argüello v. Argüello*, 155 D.P.R. 62, 79 (2001).

El Artículo 1313 del Código Civil de Puerto Rico (31 LPRA sec. 3672), bajo el cual se presentó la acción de daños en el presente caso, dispone en cuanto a la Administración de la Sociedad de Bienes Gananciales lo siguiente:

*"No obstante lo dispuesto en la sec. 284 de este título, ninguno de los dos podrá donar, enajenar, ni obligar a título oneroso, los bienes muebles e inmuebles de la sociedad de gananciales, sin el consentimiento escrito del otro cónyuge, excepto las cosas destinadas al uso de la familia o personales de acuerdo con la posición social o económica de ambos cónyuges.*

*Todo acto de disposición o administración que sobre dichos bienes haga cualquiera de los cónyuges en contravención a esta sección, y los demás dispuestos en este título, no perjudicará al otro cónyuge ni a sus herederos.*

***El cónyuge que se dedicare al comercio, industria, o profesión, podrá adquirir o disponer de los bienes muebles dedicados a esos fines, por justa causa, sin el consentimiento del otro cónyuge. No obstante, será responsable por los daños y perjuicios que pudiere ocasionar por dichos actos a la sociedad legal de gananciales.*** *Esta acción se ejercitará exclusivamente en el momento de la disolución de la sociedad legal de gananciales. (Enmendado en el 1976, ley 51)"*

Por otro lado, la base de toda reclamación de daños y perjuicios se encuentran en el Art. 1802 de nuestro Código Civil, 31 L.P.R.A. sec. 5141. Esta norma fundamental de derecho precisa lo siguiente:

*"El que por acción u omisión causa daño a otro interviniendo culpa o negligencia, está obligado a reparar el daño causado. La imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de una indemnización."*

Como se sabe, para que prospere una causa de acción en daños y perjuicios se necesita que concurran tres elementos: (1) que se haya sufrido un daño; (2) un acto u omisión culposa o negligente; y (3) nexo causal entre el daño y la acción u omisión culposa o negligente. *Blás v. Hosp. Guadalupe*, 146 D.P.R. 267, 322 (1998); *Sepúlveda de Arrieta v. Barreto*, 137 D.P.R. 735, 753 (1994); *Bonilla v. Chardón*, 118 D.P.R. 599, 610 (1987).

Como indicamos, uno de los elementos es un acto u omisión culposa o negligente. Nuestra jurisprudencia definió la negligencia de la siguiente forma:

*"...el quebrantamiento del deber impuesto o reconocido por ley de ejercer, como lo haría un hombre prudente y razonable, aquel cuidado, cautela, circunspección, diligencia, vigilancia y precaución que las circunstancias del caso exijan, para no exponer a riesgos previsibles e irrazonables de daños como consecuencia de la conducta del actor, a aquellas personas que, por no estar ubicadas muy remotas de éste, un hombre prudente y razonable hubiese previsto, dentro de las circunstancias del caso, que quedaban expuestas al riesgo irrazonable creado por el actor." López v. Dr. Cañizares*, 163 D.P.R. 119, 132 (2004).

Es norma reiterada en nuestra jurisdicción que el demandante tiene el peso de la prueba para demostrar la negligencia, el daño y el nexo causal entre ambos. *Matos v. Adm. Servs. Médicos de P. R.*, 118 D.P.R. 567, 569 (1987); *Cotto v. C.M. Ins. Co.*, 116 D.P.R. 644, 650 (1985). En el ordenamiento evidenciario que rige actualmente, se requiere el peso de la prueba a la parte que sostiene la afirmativa de una controversia. Regla 10 de Evidencia, 32 L.P.R.A. Ap. IV, R. 10. *Vaquería Garrochales, Inc. v. A.P.P.R.*, 106 D.P.R. 799, 800-801 (1978). Daño es el menoscabo material o moral que sufre una persona en sus bienes, su propiedad o en su patrimonio. La responsabilidad civil cobra vida por el deber de resarcir a la parte damnificada otorgándole un valor económico al daño sufrido. *Rivera v. Tiendas Pitusa*, 148 D.P.R. 695, 700 (1999); *García Pagán v. Shiley Caribbean, etc.*, 122 D.P.R. 193, 205-206 (1988).

Por otro lado, también se ha establecido como regla general de que *"el fraude no se presume"*, sólo significa que **aquél que lo afirma debe probarlo con** *certeza razonable, esto es, con preponderancia de la evidencia que satisfaga la conciencia del juzgador. De Jesús Díaz v. Carrero*, 112 D.P.R. 631 (1982); *Canales v. Pan American*, 112 D.P.R. 329 (1982); *García López v. Méndez García*, 102 D.P.R. 383 (1974); *Carrasquillo v. Lippitt & Simonpietri, Inc.*, 98 D.P.R. 659 (1970). Si bien el Art. 1249 de nuestro Código Civil establece varias presunciones de fraude, éstas no constituyen los únicos medios para probarlo. Su apreciación como cuestión de hecho es de la **exclusiva competencia del juzgador de instancia**. *González v. Quintana*, 145 D.P.R. 4563 (1998). En *De Jesús Díaz* v. *Carrero, supra*, el Tribunal Supremo expresó que el juzgador de hechos debía evaluar cada situación **caso a caso**, sin ataduras técnicas procesales.

Del examen del expediente y la transcripción en esta causa surge lo siguiente:

"El testimonio ofrecido por el Contador Publico Autorizado (CPA), Sr. Francisco Luis, testigo presentado por la apelante para establecer su caso, estableció que:

[Transcripción, Tomo II, 13 de agosto de 2007, págs. 8-193]

El demandado no ganó Ciento Nueve Millones de dólares ($109,000,000) durante el matrimonio, como la apelante alegó en la demanda, sino que ganó alrededor de Ocho Millones ($8,000,000). [Transcripción, págs. 141-148]

El CPA no identificó que hubiera evidencia alguna de que el demandado generara ingresos en efectivo o de alguna fuente que no fuera su trabajo, o las que surgen de los documentos que revisó. Tampoco obtuvo evidencia alguna de cuentas fuera de Puerto Rico u otras cuentas que no fueran las identificadas en los documentos que revisó. [Transcripción, pág. 185]

El CPA concluyó que las pérdidas que se derivan de las inversiones que realizó el demandado, durante el matrimonio **son un riesgo inherente e impredecible,** en ese tipo de negocio. [Transcripción, págs. 186-187]

El CPA no encontró evidencia de que, de alguna forma, el demandado desviara dinero de la sociedad de gananciales, con propósitos fraudulentos, de mala fe o para engañar a la parte demandante, ni que cometiera algún acto fraudulento o ilegal. [Transcripción, pág. 188]"

El testimonio presentado por el Sr. José A. Herrero (Economista) señaló que:

"El demandado aportó bienes privativos al matrimonio, un depósito de $250,000.00 el 29 diciembre de 1984, que fueron reconocidos por el testigo de la demandante, el cual lo había incluido en su informe." [Transcripción, págs. 88-89]

Del resto de la prueba presentada ante este tribunal se observa que:

"Desde antes del matrimonio, la demandante conocía las actividades del comercio a que se dedica el demandado.

La demandante, desde que se inicia el matrimonio con el demandado tuvo participación en los asunto de negocio de éste, compartiendo en actividades sociales y de reconocimiento con clientes del demandado, las esposas de éste, en y fuera de Puerto Rico.

Durante el matrimonio, la demandante tenía tarjetas de crédito, las que utilizaba libremente, incluyendo para comprar mercancía que luego revendía y que le permitía depositar dinero en una cuenta de banco, a su nombre.

La demandante compartía cuentas de cheques con su esposo, las que utilizaba sin que se le impusiera restricción. Además tenía al menos, una cuenta a su nombre solamente para depositar dinero producto de ventas de mercancía, que compraba con tal propósito.

La demandante participó en la selección y compra del apartamento que compartió con el demandado y que actualmente constituye la residencia de ésta, con su segundo esposo e hijas. El demandado realiza los pagos de esta propiedad.

La demandante y el demandado adquirieron otros bienes inmuebles, que ella disfrutó durante el matrimonio, con su familia y que también se utilizaban por los clientes del demandado.

Ni en su testimonio, ni mediante prueba documental o de otra naturaleza, la demandante pudo establer que la sociedad de gananciales compuesta por ella y el demandado se menoscabara o se afectara por actos de fraude, o de mala *administración* o de mala fe, de *engaño*, o de intento deliberado de enajenar los bienes del patrimonio conyugal. Tampoco se le preguntó, ni tampoco declaró sobre daño alguno sufrido, por actos de esa naturaleza, ni el monto de dichos daños."

De lo examinado en este caso, nos ha llevado a determinar varias cosas. Surge que en este pleito, la parte apelante no era ajena a la naturaleza de las actividades comerciales que se desarrollan en las empresas para las que el demandado trabajaba durante el matrimonio y trabaja actualmente. Surge, además, que debido al tipo de negocio que realizaba el apelado, durante los nueve (9) años de matrimonio, la apelante se benefició del estilo de vida y que ésta tenía conocimiento de las actividades financieras de su esposo de las cuales participó también. Más aún, de la prueba presentada por la misma apelante y sus testigos, *no surge* que el apelado haya participado o cometido fraude, o incurriera en negligencia, que causare la posibilidad de un daño a la apelante. Así quedó demostrado por el testimonio del CPA, traído por la demandante a declarar.

Por otro lado, según se desprende del expediente del caso, en cuanto al testimonio del Sr. Carlos Urrutia, la apelante avaló y expresó claramente que *era correcta la alegación de la parte demandada,* en lo referente a la exclusión del testimonio de éste, por lo que el tribunal correctamente declaró, ha lugar, la solicitud de exclusión de dicho testimonio.

En cuanto al cuarto error señalado, cabe mencionar que tampoco se cometió. La sentencia parcial aquí en controversia se emitió el miércoles 20 de febrero de 2008, y la parte apelante formuló tardíamente su recusación, el viernes 29 de febrero de 2008.

Después de leída y estudiada la transcripción de este caso, no podemos pasar por alto varios hechos que llamaron nuestra atención. Esta acción lleva 15 años en litigio, la apelante ha cambiado de abogados en más de 5 ocasiones, la apelante utilizó dinero ganancial para cubrir sus actividades de negocios mientras estuvo casada; y a pesar del tiempo transcurrido, los testigos y la prueba presentada por la parte apelante no ha demostrado que el apelante haya incurrido en ningún tipo de fraude o negligencia durante el matrimonio de ambos.

Por los hechos señalados y la aplicación del derecho a la causa que atendemos, debemos ofrecerle total deferencia al hermano foro de instancia, por lo que confirmamos.

**Dictamen**

Conforme a lo antes expuesto, *confirmamos* la Sentencia Parcial del 20 de febrero de 2008 aquí apelada. Se devuelve el caso al TPI para que compatible con su calendario, de prioridad a este caso, considerando que la causa se ha litigado en nuestros tribunales por más de quince (15) años.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Dimarie Alicea Lozada
Secretaria Tribunal de Apelaciones

**ESCOLIOS 2009 DTA 95**

**1.** A petición de las partes, el presente caso se consideró con el apéndice del Caso KLAN-2008-01030.

**2.** También se examinó la transcripción que consta de (1,106) folios.