

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Ivette Declet Ríos<br><br>Recurrida<br><br>v.<br><br>Departamento de Educación<br><br>Peticionario | Certiorari<br><br>2009 TSPR 188<br><br>177 DPR _____ |

Número del Caso: CC-2008-1153

Fecha: 29 de diciembre de 2009

Tribunal de Apelaciones:
    Región Judicial de San Juan, Panel III

Juez Ponente:
    Hon. José A. Morales Rodríguez

Abogadas de la Parte Peticionaria:

    Lcda. María T. Caballero García

    Lcda. Marta Del P. Santiago Ramos

Abogado de la Parte Recurrida:

        Lcdo. Osvaldo Burgos Pérez

Materia: Revisión Administrativa

Este documento constituye un documento oficial del    Tribunal Supremo que está sujeto a los cambios y correcciones del pr    oceso de compilación y publicación oficial de las decisiones    del Tribunal. Su distribución electrónica se hace como un servici    o público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ivette Declet Ríos

    Recurrida

       v.                                                    *Certiorari*

                           CC-2008-1153

Departamento de Educación

    Peticionario

Opinión del Tribunal emitida por la Jueza Asociada señora Pabón Charneco

San Juan, Puerto Rico a 29 de diciembre de 2009.

El presente recurso nos permite determinar si un Oficial Examinador del Departamento de Educación tiene facultad para imponer honorarios de abogado al Estado tras culminar el proceso adjudicativo iniciado por una Querella instada. Resolvemos en la negativa.

El peticionario, Gobierno de Puerto Rico, nos solicita que revisemos una Sentencia del Tribunal de Apelaciones que confirmó una determinación administrativa que resultó de un procedimiento al amparo del Reglamento del Procedimiento para la Resolución de Querellas de Educación Especial Mediante Vistas Administrativas, Reglamento Núm. 4493, Departamento de Estado, 8 de julio de 1991.

Mediante dicha Resolución, el foro administrativo concedió a la recurrida, Ivette Declet Ríos, la suma de dos mil trescientos cincuenta (2,350) dólares en concepto de honorarios de abogado.    A continuación, exponemos los hechos que dieron génesis a la controversia traída ante nuestra consideración.

## I

El caso de autos tuvo su albor el 12 de septiembre de 2007 con la presentación de una Querella contra el Departamento de Educación.   La querellante Ivette Declet Ríos, en adelante, la estudiante o la recurrida, está registrada en el Programa de Educación Especial y estudia en la Escuela José Berríos Berdecía del Distrito Escolar de Barranquitas. La estudiante tiene varias afecciones las cuales le afectan en su proceso de desarrollo y aprendizaje.   A tales efectos, requiere, *inter alia*, acomodos y equipos de asistencia tecnológica, así como otros servicios relacionados.    Esto surge de una Evaluación de Asistencia Tecnológica que le realizó el Departamento de Educación a la estudiante el 30 de marzo de 2005.   Empero, habiendo transcurrido un periodo de dos (2) años sin que la agencia hubiese adquirido los equipos de asistencia tecnológica recomendados y afectándose los servicios y el derecho a la educación de la estudiante, ésta instó la Querella de autos solicitando los mismos.   A su vez, y a pesar de que la recurrida contaba con veintiún

(21) años de edad a la fecha de la presentación de la Querella, no se habían comenzado ninguno de los procesos de transición, supuestos a iniciar desde hacía varios años. Cabe señalar que la recurrida reclamó en su Querella la suma de tres mil quinientos (3,500) dólares en concepto de honorarios de abogado.

El 9 de noviembre de 2007, se celebró la vista administrativa. El Departamento de Educación aceptó las alegaciones de la recurrida en cuanto a los servicios solicitados en la Querella, servicios que admitió no debían ser postergados. En consecuencia, las partes allegaron a varios acuerdos recogidos en una Resolución Parcial y Orden de 21 de diciembre de 2007.

Asimismo, se celebraron dos vistas de seguimiento el 14 de diciembre de 2007 y el 24 de enero de 2008 debido a que varios de los acuerdos alcanzados previamente no habían sido todavía cumplidos. Empero, el Departamento de Educación evidenció que se estaban realizando las gestiones por personal de la agencia para suplir el equipo requerido. Ante lo anterior, el representante legal de la recurrida se allanó a que se dictara Resolución en el caso ordenando el cumplimiento de los asuntos que restaban por resolverse. El Oficial Examinador emitió la correspondiente Resolución.

Tras varios incidentes, el 15 de abril de 2008, el Oficial Examinador emitió una Resolución Enmendada

concediendo a la recurrida la suma de dos mil trescientos cincuenta (2,350) dólares en concepto de honorarios de abogado en virtud de la autoridad que interpretó le confería la Sección 1415 de la Ley Federal de Educación Especial vigente, Ley Púb. Núm. 108-446, de 3 de diciembre de 2004 (118 Stat. 2647), 20 U.S.C. sec. 1415(i)(3)(B), conocida en inglés como *Individuals with Disabilities Education Improvement Act*; la Ley Núm. 51 de 7 de junio de 1996, conocida como "Ley de Servicios Educativos Integrales para Personas con Impedimentos", 18 L.P.R.A. sec. 1351 *et seq.*, y el Reglamento para la Resolución de Querellas de Educación Especial, *supra*. El Departamento de Educación solicitó reconsideración, siendo denegado el petitorio.

Inconforme, el Departamento de Educación instó recurso de revisión administrativa ante el Tribunal de Apelaciones. Arguyó la agencia ante el tribunal apelativo intermedio que el único foro con autoridad para conceder honorarios de abogado al palio del estatuto federal era un tribunal. Evaluado el señalamiento, el Tribunal de Apelaciones emitió la Sentencia recurrida. Mediante la misma confirmó el dictamen administrativo.

Razonó el foro *a quo*, tras realizar un análisis del estatuto federal, que la disposición sobre honorarios de abogado dispuesta en el inciso (i) de la Sección 1415 validaba su concesión "*in any action or proceeding brought*

*under this section*", lo cual debía incluir los procedimientos administrativos.    En particular apuntó dicho tribunal:

> El texto de la IDEIA no es un modelo de redacción. Está claro que la sec. 615 (i) (3) dispone que "the court, in its discretion, may award reasonable attorneys´ fees as part of the costs…" Pero esa parte del texto está precedida por la siguiente frase: "In general: In any action or proceeding brought under this section, the court…" Cuando vamos al texto a buscar lo que significa "under this section" notamos que la norma forma parte de la sección de la ley sobre "administrative procedures" que abarca desde los procesos administrativos de las agencias estatales hasta los procesos judiciales ante los tribunales federales como estatales. Por eso, el Oficial Examinador de esta causa ante nosotros, concluyó, con razón, en la Resolución impugnada que:
>
> > Si bien es cierto que el estatuto indica "Tribunales" ("courts") no es menos cierto que la disposición que regula todo lo concerniente al asunto relacionado a los honorarios de abogado está bajo el inciso principal denominado Procedimientos Administrativos ("Administrative Procedures"), lo cual pudiera interpretarse que el Congreso no cierra la puerta a que dentro de un proceso administrativo se concedan los mismos, máximo cuando la parte prevaleciente puede ser una dentro de un procedimiento administrativo que no haya tenido que alcanzar los tribunales.

Insatisfecho, el Departamento de Educación instó reconsideración, la cual fue denegada.

Inconforme, el Procurador General, en representación del Departamento de Educación, acude ante nos señalando que se cometió el siguiente error:

Erró el Tribunal de Apelaciones al concluir que el Juez Administrativo está facultado para imponer el pago de honorarios de abogado al Departamento de Educación debido a que:

• la Ley Federal IDEA dispone que el único foro con autoridad legal para conceder honorarios de abogado es el "tribunal".

• este asunto no se ha resuelto en el caso *Rosa Lydia Vélez v. Secretario del Departamento de Educación*, KPE-80-1738 al cual pertenece la recurrida como miembro de la clase.

Vista la petición de *certiorari*, acordamos expedir. Con el beneficio de la comparecencia de ambas partes, procedemos a resolver sin ulterior trámite.

## II

De umbral debemos apuntar que el peticionario nos señala que el caso *Vélez y otros v. Departamento de Educación*, KPE1980-1738(907), pleito de clase con relación al cumplimiento por el Estado con las leyes federales y estatales de educación especial, es vinculante para la recurrida por ser miembro de la clase. A tales efectos, en dicho caso se estipuló el estudio futuro por las partes de la autoridad que tienen los oficiales examinadores para otorgar honorarios en casos de educación especial.[1] Por su

---

[1] El peticionario hace referencia a la Sentencia por Estipulación de 14 de febrero de 2002 del caso *Vélez y otros v. Departamento de Educación*, KPE1980-1738(907):

"Durante el transcurso de la monitoría se estudiará la propuesta que someterá la representación de la clase en torno a la facultad de los jueces administrativos a conceder honorarios de abogado a una parte prevaleciente. El Departamento de Educación hará acopio de la información sobre este asunto, para establecer su posición al respecto. En caso de que las partes no arriben a un

parte, la recurrida apunta que no puede condicionarse la controversia a tal estipulación, especialmente cuando el estatuto federal concernido ya ha dispuesto sobre el asunto.

Debemos acotar que el caso *Vélez y otros v. Departamento de Educación*, *supra,* no está ante nuestra consideración. Éste todavía se encuentra a nivel de instancia. No obstante, debido a que las partes no pueden acordar las facultades que tienen o no los oficiales examinadores bajo las leyes federales y estatales de educación especial, nos limitamos al análisis del primer error señalado: si un Oficial Examinador del Departamento de Educación tiene facultad para imponer honorarios de abogado al Estado al culminar el proceso adjudicativo.

**III**

En Puerto Rico el derecho a la educación tiene rango constitucional. A tales efectos, la Sección 5 de la Carta de Derechos de nuestra Constitución establece que: "[t]oda persona tiene derecho a una educación que propenda al pleno desarrollo de su personalidad y al fortalecimiento del respeto de los derechos del hombre y de las libertades fundamentales". Art. II, Sec. 5, Const. E.L.A., Tomo 1, ed. 2008, pág. 292. El propósito principal de este

---

acuerdo sobre este particular someterán sus respectivas posiciones mediante memorandos de derecho para que el Tribunal resuelva si los jueces administrativos tienen la facultad o no para conceder honorarios de abogado a una parte prevaleciente como resultado de una querella."

precepto "es definir las aspiraciones colectivas sobre la educación y crear un sistema de enseñanza pública a niveles primario y secundario exclusivamente[...] sujeto a que el Estado tenga los recursos necesarios para su implantación". *Asoc. Academias y Col. Cristianos v. E.L.A.,* 135 D.P.R. 150, 168-169 (1994).

Respecto a las personas con impedimentos, el estado moderno ha tomado medidas afirmativas a fin de incorporarlos a la comunidad desde los años setenta. Entre los cambios más notables se destacó el reconocimiento de su derecho a recibir y reclamar judicialmente educación remedial. *Véase*, *Bonilla v. Chardón*, 118 D.P.R. 599, 605-06 (1987), citando a H. Quiñones Echevarría, *Educación para niños con impedimentos: Análisis de legislación y jurisprudencia,* 17 Rev. Jur. U.I. 365 (1983).

Con este escenario como norte, para los años setenta la Asamblea Legislativa aprobó la Ley Núm. 21 de 22 de julio de 1977, conocida como "Ley del Programa de Educación Especial". Al aprobarse el estatuto, la Asamblea Legislativa utilizó como modelo la entonces vigente Ley Federal de Educación Especial, Ley Púb. Núm. 94-142, de 29 de noviembre de 1975 (89 Stat. 773), conocida en inglés como *Education for All Handicapped Children Act of 1975*; *Bonilla v. Chardón, supra.*

Ambas leyes, la federal y la estatal, reconocían el derecho de los niños y niñas con impedimentos físicos a tener acceso al sistema de educación pública mediante un plan de enseñanza individualizado que atendiera sus necesidades. *Rivera v. E.L.A.*, 121 D.P.R. 582, 589 (1988). Los estatutos constituían parte de un ambicioso esfuerzo de los gobiernos de Estados Unidos y de Puerto Rico para promover la educación de niños con impedimentos. *Íd.*; *Board of Ed. Of Hendrick Hudson Central School Dist. v. Rowley*, 458 U.S. 176 (1982).

Posteriormente, y a tono con los cambios en el área de educación especial, la Ley Núm. 21, *supra*, fue derogada. La Asamblea Legislativa, cumpliendo con el mandato constitucional, así como con las exigencias de los estatutos federales, aprobó en su lugar la Ley Núm. 51, *supra*.

De la Exposición de Motivos de la Ley Núm. 51, *supra*, se desprende que la Ley Núm. 21, *supra*, se elaboró conteste con la legislación federal vigente en ese momento. Empero, posterior a la aprobación de la Ley Núm. 21, *supra*, hubo innumerables enmiendas tanto en la legislación federal como en la estatal que ameritaron conformar dicha legislación. *Véase*, Exposición de Motivos, Ley Núm. 51, *supra*, 1996 Leyes de Puerto Rico 151.

Por su parte, la Declaración de Política Pública del estatuto, 18 L.P.R.A. sec. 1352, manifiesta que:

El Gobierno de Puerto Rico se reafirma en su compromiso de promover el derecho constitucional de toda persona a una educación gratuita que propenda al "pleno desarrollo de su personalidad y al fortalecimiento del respeto de los derechos del hombre y de las libertades fundamentales". Para el logro de este propósito se trabajará conjuntamente con la familia, ya que el desarrollo integral de la persona con impedimentos debe estar enmarcado en su contexto familiar.

Forma parte de esta política pública sobre las personas con impedimentos, hasta donde los recursos del Estado lo permitan, garantizar:

(1)     Una educación pública, gratuita y apropiada, en el ambiente menos restrictivo posible, especialmente diseñada de acuerdo a las necesidades individuales de las personas con impedimentos y con todos los servicios relacionados indispensables para su desarrollo, según se establezca en su plan individualizado de servicios, y lo más cerca posible de las demás personas sin impedimentos. Esto aplica tanto a las escuelas públicas del Departamento de Educación como a las Escuelas de la Comunidad bajo la administración del Instituto de Reforma Educativa.

(2)     Un proceso de identificación, localización, registro y una evaluación por un equipo multidisciplinario debidamente calificado de todas las personas con posibles impedimentos, dentro o fuera de la escuela, desde el nacimiento hasta los veintiún (21) años de edad inclusive.

(3)     El diseño de un Programa Educativo Individualizado (PEI) que establezca las metas a largo y corto plazo, los servicios educativos y los servicios relacionados indispensables según lo determine el equipo multidisciplinario.

(4) La confidencialidad de toda información personal.

(5) Un sistema sencillo, rápido y justo de ventilación de querellas.

(6) La participación de los padres en la toma de decisiones en todo proceso relacionado con sus hijos.

(7) Una alta prioridad en los esfuerzos de carácter preventivo para reducir la incidencia de impedimentos en las personas.

(8) Actividades que promuevan la inclusión de las personas con impedimentos y de su familia a la comunidad.

En vista de lo anterior, la Ley Núm. 51, *supra*, y los reglamentos relacionados responden a la obligación del Estado de cumplir con la Ley Federal de Educación Especial, *supra*, y sus reglamentos.[2] *Véase*, Reglamento para la Provisión de Servicios Educativos Integrales para Personas con Impedimentos, Reglamento Núm. 5629, Departamento de Estado, 19 de mayo de 1997; Reglamento Núm. 4493, *supra*. El estatuto federal requiere, *inter alia*, que los estados que se benefician de fondos federales del Departamento de Educación establezcan programas de educación especial pública, gratuita, apropiada y que atiendan las necesidades especiales de

---

[2] "[Individuals with Disabilities Education Act (IDEA)] leaves to the States the primary responsibility for developing and executing educational programs for handicapped children, **but imposes significant requirements to be followed in the discharge of that responsibility.**" (Énfasis suplido.) *Schaffer v. Weast*, 546 U.S. 49, 52 (2005); *Board of Ed. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176 (1982).

cada estudiante.[3] Puerto Rico se beneficia de dichos fondos desde los años setenta y, por tanto, está obligado a cumplir con ésta.

Por otro lado, en aquellos casos en los que el derecho federal es aplicable a una controversia, los tribunales estatales tienen jurisdicción concurrente con los tribunales federales en ausencia de una reserva de jurisdicción expresa por parte del Congreso federal o "la existencia de una incompatibilidad insalvable entre la reclamación al amparo de legislación federal y el hecho de que un tribunal estatal adjudique la controversia". *Roberts v. U.S.O. Council of P.R.*, 145 D.P.R. 58, 69 (1998); *Acevedo v. Srio. Servicios Sociales*, 112 D.P.R. 256, 259 (1982). La jurisdicción concurrente se extiende a la Ley Federal de Educación Especial que expresamente autoriza a la parte perjudicada por una decisión de una agencia educativa local a acudir en revisión judicial a los tribunales estatales o federales en defensa de sus derechos. Ley Púb. Núm. 108-446, *supra*, 20 U.S.C. sec. 1415(i)(2). *Véase, Bonilla v. Chardón, supra,* pág. 608. *Véase además*, M.C. Weber, *Special Education Law and Litigation Treatise*, 3ra ed., Pennsylvania, Ed. LRP Publications, 2008, pág. 21:3.

---

[3] Ley Púb. Núm. 108-446, de 3 de diciembre de 2004 (118 Stat. 2647), 20 U.S.C. sec. 1401(31) ("The term "State" means each of the 50 States, the District of Columbia, the Commonwealth of Puerto Rico, and each of the outlying areas.")

"Al ser ésta una causa de acción federal sobre la cual ejercemos jurisdicción concurrente, estamos obligados a seguir nuestras propias opiniones anteriores y las decisiones del Tribunal Supremo de Estados Unidos". *Leyva et al. v. Aristud et al.*, 132 D.P.R. 489, 500 n.5 (1993). No obstante, debido a que este Foro estudia por primera vez esta controversia  y el Tribunal Supremo Federal no se ha expresado sobre el asunto, resolvemos con el beneficio de las interpretaciones que sobre este aspecto de la Ley Federal de Educación Especial tribunales federales inferiores y tribunales estatales han realizado, y cuyo razonamiento nos es ilustrativo para resolver la presente controversia. Así las cosas, nos disponemos a analizar el estatuto federal concernido.

La Ley Federal de Educación Especial tiene entre sus propósitos asegurar que los niños y las niñas con impedimentos reciban una educación pública, apropiada, gratuita y que atienda las necesidades especiales de cada estudiante; asegurar que los derechos de los menores con impedimentos y sus padres sean protegidos; y evaluar y asegurar la efectividad de los esfuerzos para educarlos. Ley Púb. Núm. 108-446, *supra*, 20 U.S.C. sec. 1400(d)(1),(2)y(4)(2004). Para ello provee una serie de requisitos sustantivos y procesales.  Cabe señalar que los mecanismos creados por este estatuto son considerados de los más abarcadores desarrollados por el Congreso de los

Estados Unidos. A.G. Osborne y otros, *Special education and the law: a guide for practitioners*, California, Ed. Corwin Press, 2003, pág. 167; A. Conte, *Attorney Fee Awards*, 2da. Ed., Colorado, Shepard´s/McGraw-Hill, Inc., 1993, Vol. 1, pág. 620. Entre los requerimientos procesales, la ley incluye el derecho a una vista administrativa (*impartial due process hearing*) presidida por un oficial examinador imparcial y la posibilidad de que la parte perjudicada por la decisión administrativa acuda en revisión judicial a los tribunales. Ley Púb. Núm. 108-446, *supra*, 20 U.S.C. sec. 1415(f) y (i)(2).

Cónsono con los propósitos del estatuto y reconociendo los gastos que conllevan estos procedimientos, el Congreso de los Estados Unidos autorizó expresamente desde 1986[4] la concesión de honorarios de abogado a los padres de niños y niñas con impedimentos que cumplen con los requisitos impuestos en la misma.[5] Los honorarios de abogado bajo el estatuto federal no tienen el propósito de sancionar, sino de posibilitar que muchos

---

[4] En 1986 el Congreso promulgó la Ley Púb. Núm. 99-372, de 5 de agosto de 1986 (100 Stat. 796), conocida en inglés como *Handicapped Children´s Protection Act of 1986* para permitir, entre otros extremos, los honorarios de abogado.

[5] En Puerto Rico no aplica el *American Rule,* norma federal concerniente a la imposición de honorarios de abogado por la que "como regla general y salvo disposición estatutaria en contrario, cada parte en un litigio será responsable de los honorarios de abogado en que incurra en la tramitación del mismo". *Corpak, Art Printing v. Ramallo Brothers*, 125 D.P.R. 724, 728-29 (1990). Bajo tal norma, la conducta asumida por el litigante perdidoso no es considerada. *Id.*

padres y madres puedan vindicar los derechos de sus hijos e hijas con impedimentos.[6]

## IV

En la controversia ante nuestra consideración, el Departamento de Educación reconoce que bajo el palio de la Ley Federal de Educación Especial se pueden otorgar honorarios de abogado a la parte prevaleciente en un pleito judicial o administrativo. Empero, argumenta que su imposición no es automática ni obligatoria y que el único foro que puede conceder tales honorarios de abogado es el tribunal, a su discreción, luego de demostrada su procedencia y razonabilidad bajo la Sección 1415 de la Ley Federal de Educación Especial, *supra*.

*A contrario sensu*, la recurrida arguye que los Oficiales Examinadores tienen facultad para imponer honorarios de abogado en virtud de las disposiciones de la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como "Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico", 3 L.P.R.A. sec. 2101 *et seq*., y la Ley Federal de Educación Especial, *supra*. Arguye que si bien es cierto que el estatuto federal autoriza a los "tribunales" a otorgar honorarios de abogado, faculta su imposición "para

---

[6] Los honorarios de abogado están disponibles bajo la Ley Federal de Educación Especial al padre o madre que prevalece sin requerir prueba de conducta de alguna clase por parte de los oficiales estatales. Ley Púb. Núm. 108-446, *supra*, 20 U.S.C. 1415(i)(3)(B). Véase, M.C. Weber, *Special Education Law and Litigation Treatise*, 3ra ed., Pennsylvania, Ed. LRP Publications, 2008, pág. 23:2.

cualquier acción o procedimiento" presentado bajo dicha sección. Además, es su argumento que la disposición concernida se encuentra bajo el inciso de "procedimientos administrativos" y no es exceptuada expresamente como hace para otros supuestos. A su vez, respecto a la alegada autoridad del Oficial Examinador bajo la Ley Núm. 170, *supra*, señala que ésta los faculta a imponer honorarios, pero debe ser atemperada al criterio de "parte prevaleciente" del estatuto federal, ya que en nuestra jurisdicción no se puede imponer temeridad al Estado.

La controversia presentada en el caso de autos requiere que analicemos el texto del estatuto federal para dilucidar si el Oficial Examinador está autorizado a otorgar honorarios de abogado bajo éste.[7] En lo pertinente la Ley Federal de Educación Especial indica que:

> "In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorney´s fees as part of the costs–
>
>> (I) to a prevailing party who is the parent of a child with a disability". 20 U.S.C. sec. 1415(i)(3)(B)(i)(I).

De la lectura del texto de la ley se desprende que para ordenar el pago honorarios de abogado como parte de las costas bajo el estatuto federal se requiere: (1) la

---

[7] La Sección IX(c) del Reglamento del Procedimiento para la Resolución de Querellas de Educación Especial Mediante Vistas Administrativas, Reglamento Núm. 4493, Departamento de Estado, 8 de julio de 1991, autoriza al Oficial Examinador a emitir las decisiones finales de la agencia.

existencia de una acción o procedimiento instada bajo la Sección 1415; (2) que los honorarios de abogado sean otorgados a la parte prevaleciente, según dispuesto y definido por dicha ley, y (3) que la cantidad a otorgarse sea razonable y determinada conforme a dicha sección.

El primer requisito es de particular interés en el caso de autos: los honorarios de abogado son otorgables "[i]n any action or proceeding brought under this section". Por medio de ese lenguaje, el Congreso de los Estados Unidos ha autorizado la concesión de honorarios de abogado por trabajo realizado tanto en la vista administrativa como ante los tribunales.[8] No albergamos duda al respecto. *Véase*, *Schaffer v. Weast*, 546 U.S. 49, 61 (2005). *Véase además*, *Moore v. District of Columbia*, 907 F.2d 165, 166 (D.C. Cir. 1990)(En Banc). Aunque en un principio dicha frase ocasionó ciertas confusiones respecto a su aplicabilidad al trabajo ejecutado en la vista administrativa, ha sido paulatinamente reconocido por las distintas cortes estatales y federales que incluye los honorarios de abogado por el trabajo realizado en ambos foros. M.C. Weber, *op. cit.*, págs. 20:27, 23:2; M. Schreck, *Attorneys´ Fees for Administrative Proceedings under the Education of the Handicapped Act: Of Carey,*

---

[8] La concesión de honorarios de abogado se encuentra limitada. Ésta no se extiende a los supuestos establecidos en la Sección 1415(i)(3)(D). La referida sección excluye, entre otros supuestos, la imposición de honorarios por reuniones para el diseño del Programa Educativo Individualizado, con excepción de algunas situaciones dispuestas por ley.

*Crest Street and Congressional Intent,* 60 Temp. L.Q. 599 (1987), págs. 630-31. La interpretación de que el Congreso de los Estados Unidos distinguió entre ambos foros y autorizó los honorarios por trabajo en las vistas administrativas, cuenta con apoyo en el historial legislativo y es consistente con el otorgamiento de honorarios de abogado en otras acciones de derechos civiles. *Véase*, *Moore v. District of Columbia*, *supra,* pág. 168; T. Guernsey y otros, *Special Education Law*, 2da ed., North Carolina, Ed. Carolina Academic Press, 2001, pág. 225. *Véase además*, M.C. Weber, *op. cit.*, págs. 23:5 y 23:9; D.A. Craig, *Actions Founded on Statutory Liability: Adopting a Limitations Period for Attorneys' Fees Actions Brought Under the Individuals with Disabilities Education Act,* 79 Ind. L.J. 493 (2004); A.G. Osbourne y otros, *Commentary, Attorneys Fees Are Available for Administrative Proceedings Under the EHA*, 66 Educ. L. Rep. 909, 918 (1991).

Empero, respecto a quién tiene la autoridad de otorgar dichos honorarios, el texto de la ley es claro e inequívoco: solamente los tribunales, en el uso de su discreción, pueden otorgar honorarios de abogado razonables. El historial legislativo reafirma el texto de la ley:

> **The committee […] intends that section 2 should be interpreted consistent with fee provisions of statutes such as title VII of the Civil Rights**

**Act of 1964 which authorizes courts to award fees for time spent by counsel in mandatory administrative proceedings under those statutes. See *New York Gaslight Club, Inc v. Carey,* 447 U.S. 54 (1980),** (compare *Webb v. Board of Education for Dyer* County, 53 U.S.L.W. 4473 (U.S. April 17, 1985) in which the court declined to award fees for work done at the administrative level because the statute under which the suit was brought did not require the exhaustion of administrative remedies prior to going to court).

**The committee intends that S. 415 will allow the Court, but not the hearing officer, to award fees for time spent by counsel in mandatory EHA administrative proceedings.** This is consistent with the committee´s position that handicapped children should be provided fee awards on a basis similar to other fee shifting statutes when securing the rights guaranteed to them by the EHA. (Énfasis suplido). S.Rep. No. 99-112, 99th Cong., 1st Sess., reimpreso en 1986 U.S.C.C.A.N. 1798, 1804(*"Additional Views of Senators Hatch, Weicker, Stafford, Dole, Pell, Matsunaga, Simon, Kerry, Kennedy, Metzenbaum, Dodd and Grassley"*).

En consecuencia, no podemos estar contestes con la interpretación de la ley llevada a cabo por la recurrida y que fuera acogida por el Oficial Examinador y el tribunal apelativo. No se desprende de dicha frase ni del inciso en el que fue establecida que el Oficial Examinador tenga la facultad de otorgar honorarios de abogado, mas sí, que el trabajo realizado durante dicha etapa sea posteriormente considerado para el otorgamiento de honorarios de abogado. Por tanto, rechazamos la interpretación del organismo administrativo y del Tribunal de Apelaciones por resultar en la delegación de una facultad no autorizada por el estatuto concernido.

Respecto al argumento de la recurrida de que el Oficial Examinador está facultado bajo la Ley Núm. 170, *supra*, a imponer honorarios de abogado, tal autorización se limita a la existencia de temeridad y no es aplicable al caso de autos. Ley Núm. 170, *supra*, 3 L.P.R.A. sec. 2170a(c). Como bien señala el profesor Fernández Quiñones, "[l]a referencia a las Reglas de Procedimiento Civil [en la Ley Núm. 170, *supra*,] significa que la casuística interpretativa de los alcances de la regla, y muy en especial del concepto *temeridad*, es la fuente que regirá la conducta de la agencia administrativa".[9] D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento*

---

[9] En nuestro ordenamiento jurídico procede la imposición de honorarios únicamente "en aquellos casos en que el tribunal entiende que la parte perdidosa, o su abogado, actuaron con temeridad o frivolidad" y de imponerse éstos no "tienen que necesariamente coincidir con los honorarios efectivamente pagados por la parte victoriosa a su representante legal". *Corpak, Art Printing v. Ramallo Brothers*, 125 DPR 724, 736 y 738 (1990).

Cabe señalar que no es extraño a nuestro ordenamiento la imposición de honorarios de abogado a una parte sin que medie conducta temeraria por ésta cuando la ley estatal requiere su concesión. *López Vicil v. ITT Intermedia, Inc.,* 143 D.P.R. 574 (1997). D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 2da. Ed., Colombia, Ed. Forum, 2001, pág. 100 ("Si el organismo [administrativo] resuelve controversias en el campo de la legislación social de horas y salarios, se verá precisado a aplicar las disposiciones referentes a honorarios de abogado según han sido interpretadas judicialmente. En esos casos el criterio de la temeridad no es relevante ya que las leyes exigen su imposición de manera mandatoria cuando prevalece el querellante".). *Véase* respecto a la Ley federal de Educación Especial, P.A. Zirkel, *The Remedial Authority of Hearing and Review Officers under the Individuals with Disabilities Education Act,* 58 Admin. L. Rev. 401, 425 (2006)("In the commentary accompanying the IDEA regulations, the administering agency has added a potential exception – in which state law so specifies. In the absence of such state law, H/ROs have consistently followed the judicial interpretation that attorney's fees are within the court's exclusive domain.").

*Administrativo Uniforme*, 2da. Ed., Colombia, Ed. Forum, 2001, pág. 99.

No obstante, los padres y madres que prevalecen ante el foro administrativo no quedan desprotegidos. La parte prevaleciente ante dicho foro puede acudir a los tribunales en una acción judicial independiente con el propósito de reclamar honorarios de abogado. Esta interpretación es conteste con los intereses que el Congreso intenta proteger mediante dicha legislación, su historial legislativo y la construcción judicial y administrativa de ésta y estatutos similares. M. Schreck, *supra,* págs. 652. En particular, la Ley Federal de Educación Especial permite el reembolso de honorarios de abogado "in any action or **proceeding**", que es, a su vez, el lenguaje utilizado en el Título VII de la Ley de Derechos Civiles de 1964. Se desprende del Informe del Senado, S.Rep. No. 99-112, 99th Cong., 1st Sess., *supra*, la intención de que se interpretara la sección en controversia según fuera previamente interpretada una sección similar del Título VII de la Ley de Derechos Civiles de 1964, 42 U.S.C. sec.2000e-5, en *New York Gaslight Club, Inc v. Carey,* 447 U.S. 54 (1980).[10] En dicho caso el Tribunal Supremo Federal expresó que:

---

[10] En *New York Gaslight Club, Inc v. Carey,* 447 U.S. 54, 60 (1980), la sección analizada expresaba que "In any action or proceeding under this title the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney´s fee as part of the costs." 42 U.S.C. sec. 2000e-5(k).

> [i]t would be anomalous to award fees to the complainant who is unsuccessful or only partially successful in obtaining state or local remedies, but to deny an award to the complainant who is successful in fulfilling Congress' plan that federal policies be vindicated at the state or local level. Since it is clear that Congress intended to authorize fee awards for work done in administrative proceedings, we must conclude that § 706 (f)(1)'s authorization of a civil suit in federal court encompasses a suit solely to obtain an award of attorney's fees for legal work done in state and local proceedings.

De no ser así, no se lograría el objetivo que se pretendía al autorizar la concesión de honorarios de abogado: que los padres y madres puedan defender los derechos de sus hijos e hijas con impedimentos sin estar limitados por razones económicas. Además, debe señalarse que tribunales federales y estatales, así como organismos administrativos estatales han concurrido en este punto, en esencia, que solamente los tribunales pueden otorgar honorarios de abogado bajo dicha ley, incluso en aquellos casos en los que los padres prevalecieron a nivel administrativo.[11] *Véase*, *P.N. v. Seattle Sch. Dist. No. 1*,

---

Jurisprudencia posterior a la Ley Púb. Núm. 99-372, *supra*, que interpreta la sección 1988 del Título VI de la Ley Derechos Civiles de 1964 confiere una interpretación distinta a un lenguaje similar. Particularmente, que la Sección 1988 no autoriza la concesión de honorarios de abogado, salvo instada una acción judicial para hacer valer los derechos civiles dispuestos en la referida ley. *North Carolina Department of Transportation v. Crest Street Community Council*, 479 U.S. 6 (1986). No obstante, el Congreso se basó en la interpretación de *New York Gaslight Club, Inc v. Carey*, *supra*, para darle significado a la referida frase por lo que éste evidencia la intención congresional.

[11] En 1986, la subsección correspondiente establecía que: "(B) In any action or proceeding brought under this subsection, the court, in its discretion, may award reasonable attorneys´ fees as part of the costs

474 F.3d 1165 (9no Cir. 2007); *J.H.R.* v. *East Brunswick Bd. Of Educ.*, *supra*, pág. 776; Eggers v. Bullitt County School Dist., 854 F.2d 892 (6to Cir. 1988); *Duane M. v. Orleans Parish Sch. Bd.*, 861 F.2d 115 (5to Cir. 1988); *Mathern v. Campbell County Children´s Ctr.*, 674 F.Supp. 816 (D. Wyo. 1987). *Véase además*, M.C. Weber, *op. cit.*, pág. 23:9; R.M. Gerstein y otros, *Education Law: An Essential Guide for Attorneys, Teachers, Administrators, Parents and Students*, 2da ed., Arizona, Ed. Lawyers and Judges Pub. Co. Inc., 2007, pág. 135; P.A. Zirkel, *The Remedial Authority of Hearing and Review Officers under the Individuals with Disabilities Education Act,* 58 Admin. L. Rev. 401, 425 (2006); A.G. Osborne y otros, *op. cit.*, pág. 168; T. Guernsey y otros, *op.cit.*, pág. 227; M. Schreck, *supra,* págs. 630-631.

Asimismo, aunque la ley y los reglamentos estatales vigentes guardan silencio respecto a la concesión de honorarios de abogado, tal omisión no afecta la concesión

---

to the parents or guardian of a handicapped child or youth who is the prevailing party." Ley Púb. Núm. 99-372, *supra*.

A pesar de que la Sección 1415(i)(3)(B), en lo concerniente a la concesión de honorarios de abogado, ha sido enmendada por el Congreso de los Estados Unidos desde que fue promulgada en 1986, ha mantenido la misma redacción respecto a la función de los tribunales: "the court, in its discretion, may award reasonable attorney´s fees". Véase, Ley Púb. Núm. 105-17, de 4 de junio de 1997 (111 Stat. 37); y la vigente Ley Púb. Núm. 108-446, de 3 de diciembre de 2004 (118 Stat. 2647), 20 U.S.C. 1415(i)(3)(B), conocida en inglés como "Individuals with Disabilities Education Improvement Act". Por tanto, tal interpretación consistente por parte de los tribunales se presume, pues, sancionada. *Román v. Superintendente de la Policía*, 93 D.P.R. 685, 690 (1966). Véase además, *Pierce v. Underwood*, 487 U.S. 552, 567 (1988).

de dicho remedio, dispuesto en el derecho federal, por los tribunales estatales. El Congreso Federal no ha dispuesto reserva de jurisdicción expresa,[12] ni existe una incompatibilidad insalvable entre la reclamación al amparo de legislación federal y el hecho de que un tribunal estatal adjudique la controversia. Al contrario, de esta forma se otorga un remedio completo a los niños y niñas con impedimentos y sus padres. Véase, *Bonilla v. Chardón*, *supra*, pág. 615. Véase *además*, *W.R. v. School Board of Osceola County*, 726 So. 2d 801 (Fla. App. 1999); *Doolittle v. Meridian Joint Sch. Dist. No. 2*, 919 P.2d 334, 343 (Idaho 1996); *J.H.R. v. East Brunswick Bd. of Educ.*, 705 A.2d 766 (N.J. App. 1998); *Lapp v. Reeder Pub. Sch. Dist.*

---

[12] Aunque no fue argüido en el caso de autos, en otras jurisdicciones se ha argumentado que solamente los tribunales federales pueden otorgar honorarios de abogado a la parte prevaleciente debido a que la subsección que le antecede, 20 U.S.C. sec. 1415(i)(3)(A), previamente 20 U.S.C. sec. 1415(e)(4)(1975), expresa que "The district courts of the United States shall have jurisdiction of actions brought under this section without regard to the amount in controversy". *Zipperer v. School Bd. Of Seminole County,* 111 F.3d 847, 851 n.2 (11vo Cir. 1997). No obstante, dicho lenguaje no concede jurisdicción a los tribunales federales de forma expresa y exclusiva. *Roberts v. U.S.O. Council of P.R.*, 145 D.P.R. 58 (1998). Véase además, *Yellow Freight System, Inc. v. Donelly*, 494 U.S. 820 (1990)("The omission of any such provision is strong, and arguably sufficient, evidence that Congress had no such intent.")

Además, la referida subsección, Sección 615(e)(4) de la Ley Púb. Núm. 94-142, de 29 de noviembre de 1975 (89 Stat.774), conocida en inglés como *Education for All Handicapped Children Act of 1975,* es anterior a la enmienda efectuada a la Ley Federal de Educación Especial por la cual se autoriza la concesión de honorarios de abogado, Ley Púb. Núm. 99-372, *supra*. Cabe señalar que no fue hasta 1980 que se eliminó el requisito de "amount in controversy" en casos con controversias federales, Ley Púb. Núm. 96-486, de 1 de diciembre de 1980 (94 Stat. 2369), conocida en inglés como *Federal Question Jurisdictional Amendments Act of 1980*, razón por la que se ha señalado que la Ley Federal de Educación Especial expresamente otorgó jurisdicción a los tribunales federales de distrito, a través de la referida subsección, eliminando el requisito de "amount in controversy" para estos casos en particular. *J.H.R. v. East Brunswick Bd. of Educ.*, 705 A.2d 766, 776 (N.J. App. 1998).

*No. 3*, 491 N.W.2d 65, 71 (N.D. 1992). *Pero véase*, *Zipperer v. School Bd. Of Seminole County,* 111 F.3d 847, 851 n.2 (11vo Cir. 1997). Concluimos, por tanto, que la jurisdicción concurrente sobre el estatuto federal se extiende a la concesión de honorarios de abogado.

Cónsono con lo anterior, los padres que prevalecen ante el foro administrativo y para cuya determinación no se acude en revisión judicial al tribunal apelativo, pueden acudir a los tribunales, estatales o federales, en una acción independiente con el único propósito de que se le concedan los honorarios de abogado según lo dispuesto en la Ley Federal de Educación Especial. De esta forma se abona al propósito de las leyes federales y estatales, a la política pública reconocida y se asegura el acceso a la justicia tanto de los niños y niñas con impedimentos como de sus padres y madres. *Véase*, *P.N. v. Seattle Sch. Dist. No. 1*, 474 F.3d 1165 (9no Cir. 2007); *Warner v. Independent Sch. Dist. No. 625*, 134 F.3d 1333 (8vo Cir. 1998); *Angela L. V. Pasadena Indep. Sch. Dist.*, 918 F.2d 1188 (5to Cir. 1990); *Moore v. District of Columbia*, *supra,*(en banc); *J.H.R. v. East Brunswick Bd. Of Educ.*, *supra*, pág. 777. *Véase además*, M.C. Weber, *op. cit.*, págs. 20:27 y 23:9; T. Guernsey y otros, *op. cit.*, pág. 228; A. Conte, *op.cit.*, pág. 214.

Sin embargo, cabe recalcar que la parte prevaleciente deberá presentar prueba suficiente de las cantidades

solicitadas por honorarios de abogado, especificando éstos adecuadamente para que el tribunal pueda determinar la razonabilidad de la cantidad a imponerse.

**V**

Resolvemos, por tanto, que el Oficial Examinador no tiene autoridad bajo la Ley Federal de Educación Especial, *supra*, ni la Ley Núm. 170, *supra*, para otorgar honorarios de abogado por el trabajo realizado durante una vista administrativa en virtud de ambos estatutos. No obstante, el padre o madre de un niño o niña con impedimentos que es parte prevaleciente según la Ley Federal de Educación Especial podrá acudir tanto al Tribunal de Primera Instancia o al Tribunal de Distrito Federal para que se le otorguen los mismos.

Por los fundamentos antes expuestos, revocamos la Sentencia recurrida. Se dictará Sentencia de conformidad.


                              Mildred G. Pabón Charneco
                                   Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Ivette Declet Ríos

    Recurrida               CC-2008-1153      *Certiorari*

      v.

Departamento de Educación

    Peticionario


SENTENCIA


En San Juan, Puerto Rico, a 29 de diciembre de 2009.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se revoca la Sentencia emitida por el Tribunal de Apelaciones.


Así lo pronunció y manda el Tribunal y certifica la Secretaria del Tribunal Supremo.


                      Aida Ileana Oquendo Graulau
                    Secretaria del Tribunal Supremo